WADE IGLEHART JOHNSON *v.* STATE
OF MARYLAND

[No. 950, September Term, 1976.]

*Decided May 17, 1977.*

The cause was argued before POWERS, MASON and LISS, JJ.

*James M. Kramon, Assigned Public Defender*, with whom were *Kramon & Graham* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Warren B. Duckett, State's Attorney for Anne Arundel County*, on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

The appellant, Wade Iglehart Johnson, was indicted in Anne Arundel County, Maryland, in three cases charging the robbery of an employee of Rainbow Cleaners in Annapolis during the course of which the employee was shot and seriously injured, and the robbery and assault of an

employee of the Acme Market in Annapolis. The cases were removed for trial to the Circuit Court for Carroll County and were tried before a judge and jury. The jury found the appellant guilty of one or more counts in each of the indictments. Concurrent terms of imprisonment were imposed and it is from these judgments that the instant appeal was filed.

We shall refrain from detailing at length the evidence given at the trial which for the most part is not material to the issues raised by this appeal. We shall, instead, highlight the portions of the evidence which pertain to the legal questions raised by the appellant. He raises the following questions to be determined in this appeal.

I. Did the trial court err in refusing to grant appellant's motion to suppress his extrajudicial, inculpatory statement because (a) the statement was the product of an unlawful arrest, and (b) the statement was involuntary?

II. Did the trial court err in failing to exclude the in-court identifications of the appellant on the ground that such identifications were the product of impermissibly suggestive prior photographic identifications?

III. Did the trial judge err in refusing to declare a mistrial because of inflammatory and prejudicial arguments to the jury by the prosecutor?

We answer each of these queries in the negative for the reasons we shall hereafter elucidate and shall affirm the judgments of the trial court.

### I(a).

We have carefully reviewed the voluminous record of the suppression hearing and from the testimony have distilled the following factual chronology of the events. The robberies occurred on January 13 and January 24, 1975. An arrest warrant was obtained for the appellant on January 25, and the police in several trips to his home advised his family that they wished to talk to him about one of the robberies. On January 30 at 3:15 p.m., the appellant, accompanied by several members of his family, surrendered himself at the

Annapolis police headquarters. He was advised at that time that the police had a warrant for his arrest for the robbery of the Acme Market. He was turned over to one of the officers for processing (i.e., fingerprinting and photographing) and then delivered to two officers for interrogation. The accused was given his Miranda rights, each of which was read to him; he was asked whether he understood each of them after they were read to him and he indicated that he did; then he placed his initials after each of the rights read to him and signed his name at the bottom of the sheet indicating that he had been read his rights, that he understood them, that there were no threats or inducements, that he waived his right to an attorney and that he was prepared to make a statement.

At this point in the proceedings, the appellant advised the officers that he was feeling sick because of a number of pills, prescribed by a doctor, which he had taken shortly before he came to the station. The officers asked if he wanted treatment at a hospital and started to make arrangements for his transfer to the Anne Arundel General Hospital, but the accused changed his mind and asked for some time for a rest. The officers noted that he appeared glassy-eyed and that his lips were very wet. The officers immediately terminated the interrogation and returned the accused to the police lockup.

The following morning at about 9:45 a.m. the accused was taken to the interrogation room. The appellant, according to the police officers, looked alright — the glassiness of the eyes had disappeared, but his lips were still very moist. The Miranda rights procedure was repeated and the appellant again initialed each of the rights sentences and signed the rights sheet indicating that he wished to make a statement. The officers testified that during the questioning the appellant was permitted several periodic relief breaks, a coffee break, a food break and several cigarette breaks. He was also permitted to make at least two telephone calls. The appellant made an inculpatory statement as to the Acme Market robbery and interrogation was completed at 3:45 p.m. He was then taken before a commissioner where bail

was set. It is conceded by the State that a commissioner was available at all times, in an adjoining building to the police headquarters, from the time of arrest of the appellant until the time that he was actually taken before the commissioner.

Later in the afternoon of January 31, as a result of certain information developed by the officers, the accused was advised that they wished to discuss the Rainbow Cleaners holdup with him. At about 5:55 p.m. he was again advised of his rights and gave an inculpatory statement. That interrogation was completed at 6:55 p.m. At about 10:45 p.m., as a result of a complaint of stomach cramps, the appellant was taken to the hospital, given an injection, and then released for return to the police station.

A total of seven arrest warrants for the appellant had been obtained by the police beginning on January 25, 1975. The appellant was in custody for the first time on January 30, and the first warrant was served on January 31 at 3:45 p.m. after the Acme statement had been obtained. The remaining warrants were served on February 1 at 11:55 p.m.

Our task is to assess the correctness of the trial court's denial of the appellant's motion to suppress the in-custody extrajudicial statements made by the accused to the police. We are limited in our review to the evidence produced at the suppression hearing. *Dobson v. State*, 24 Md. App. 644, 335 A. 2d 124 (1975).

The appellant contends that the statements obtained from him were the result of an illegal arrest and that as "fruits of the poisonous tree" they should not have been received into evidence. The rule upon which appellant relies was promulgated by the Supreme Court in *Wong Sun v. United States*, 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963). The Maryland courts disassociated themselves from that decision in a long line of cases in both the Court of Appeals and this Court,[1] but reversed their position by adopting the *Wong Sun* rationale in the case of *Everhart v. State*, 274 Md.

---

1. The history of Wong Sun's treatment in the Maryland appellate courts can be found in Ryon v. State, 29 Md. App. 62, 73-74, 349 A. 2d 393, 401-02 (1975) n.13.

459, 337 A. 2d 100 (1975), *rev'g*, 20 Md. App. 71, 315 A. 2d 80 (1974). We followed suit in the case of *Ryon v. State*, 29 Md. App. 62, 349 A. 2d 393 (1975), *aff'd*, 278 Md. 302, 363 A. 2d 243 (1976).

*Ryon* was originally before this Court on appeal from Ryon's conviction by a jury in a case of murder in the first degree. On direct appeal this Court affirmed; certiorari was denied by the Court of Appeals. *Ryon v. State*, No. 376, September Term, 1973, filed 19 June 1974 (unreported), *cert. denied*, 272 Md. 747 (1974). The Supreme Court of the United States subsequently in a memorandum opinion did grant certiorari, *Ryon v. Maryland*, 422 U. S. 1054, 95 S. Ct. 2674, 45 L.Ed.2d 705 (1975), vacated the judgment of this Court and remanded the case for further consideration in light of *Brown v. Illinois*, 422 U. S. 590, 95 S. Ct. 2254, 45 L.Ed.2d 416 (1975). In *Brown* the accused had been arrested without probable cause and without a warrant under circumstances indicating that the arrest was investigatory. He gave two in-custody inculpatory statements. The Illinois Supreme Court sustained a denial of a motion to suppress by the trial court on the ground that the giving of the Miranda warnings served to break the causal connection between the illegal arrest and the giving of the statements and the statements were therefore sufficiently an act of free will to purge the primary taint of the unlawful invasion.

The Supreme Court reversed on the ground that the Illinois courts erred in adopting a per se rule that the Miranda warnings, in and of themselves, were sufficient to purge the taint of the illegal arrest under the Fourth Amendment to the United States Constitution. It held that the question of whether a confession is voluntary under *Wong Sun* must be answered on the facts of each case and the burden of showing admissibility of in-custody statements of persons who have been illegally arrested rests on the prosecutor. We followed this reasoning in *Ryon, supra*, where Chief Judge Orth of this Court laid down the following guidelines:

> "1) The Fourth Amendment exclusionary rule applies equally to statements and tangible evi-

dence obtained following an illegal arrest or an otherwise illegal search and seizure.

2) Such statements are not rendered inadmissible simply because of the illegal arrest or unreasonable search and seizure.

3) Such statements are not rendered admissible simply because the Miranda warnings were fully given.

4) Admissibility of such statements, vel non, must be answered on the facts of each case, upon consideration of:

  (a) the voluntariness of the statement, which is a threshold requirement;

  (b) compliance with the Miranda safeguards, which is important in determining whether the statements were obtained by exploitation of the illegal conduct;

  (c) other relevant factors, such as

    (i) the temporal proximity of the arrest and the confession;

    (ii) the presence of intervening circumstances; and

    (iii) 'particularly, the purpose and flagrancy of the official misconduct.' " *Id.* at 71-72, 349 A. 2d at 399-400.

We believe both *Brown* and *Ryon* are distinguishable from the case sub judice. We do not agree, as urged by the appellant, that there was a lack of probable cause to arrest the accused. We point out that prior to the issuance of the arrest warrant the police were in possession of a report of the commission of a felony, a physical description similar to that of the accused, and the tag number of the motor vehicle alleged to have been involved in the robbery. The motor vehicle was owned by the appellant. There was a photographic identification of the appellant by an

eyewitness. While it is true that the photographic identification was subsequently suppressed by the trial court, the determination of probable cause must be related back to the facts and circumstances existing at the time of the issuance of the warrant rather than to those developed at a full-blown suppression hearing. Judge Moylan speaking for the Court in dicta found in *Everhart v. State*, 20 Md. App. 71, 93, 315 A. 2d 80, 94 (1974), *rev'd on other grounds*, 274 Md. 459, 337 A. 2d 100 (1975), posed a series of rhetorical questions which he answered in the negative as follows:

> "A policeman might allege that a suspect had a prior criminal record; would he be required to establish 'aid and assistance of counsel' under *Burgett v. Texas*, 389 U. S. 109, 88 S. Ct. 258, 19 L.Ed.2d 319 (1967)? A policeman might allege that a robbery victim had selected a photograph of the suspect, for whose home a warrant was being sought; would he be required to negative 'im- permissive suggestiveness' under *Simmons v. United States*, 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968)? A policeman might allege a confession by the suspect or by a codefendant; would he be required to negative a violation of *Miranda v. Arizona*, [384 U. S. 436 (1966)]? The problems would be infinite, and the mischief overwhelming."

We conclude that his reasoning in that case is equally applicable in this one.

We point out, further, that even allowing for the suppression of the tainted photographic identification, the facts known to the police at the time of the issuance of the warrant were more than sufficient to justify an arrest. *See*: *Williams and Jones v. State*, 3 Md. App. 115, 238 A. 2d 140 (1968), *cert. denied*, 250 Md. 732-33 (1968), *cert. denied*, 393 U. S. 1006 (1968) (description of perpetrators of a felony by an unidentified informant, together with "elusive" movements of an automobile was ruled sufficient to establish probable cause); *Duckett v. State*, 3 Md. App. 563,

240 A. 2d 332 (1968) (description of kidnappers and their automobile was held adequate probable cause for arrest); *Hale v. State,* 5 Md. App. 205, 245 A. 2d 908 (1968) (report of "four white males" with the tag number of an automobile involved in a breaking and entering was sufficient to justify an arrest); *Franklin v. State,* 18 Md. App. 651, 308 A. 2d 752 (1973), *cert. denied,* 270 Md. 739 (1973) (description of a car operated by the accused was sufficient probable cause for an arrest).

On this issue appellant has another arrow in his quiver. He contends that the statements obtained by the police were tainted because of the failure of the police to comply strictly with the provisions of the Maryland District Rules. The pertinent portions of these rules read as follows:

M.D.R. 706 f. 1. (a) states:

> "A warrant shall be executed by the arrest of the defendant. The arresting officer need not have the warrant in his possession at the time of the arrest, but in that case, he shall at that time inform the defendant of the offense charged and of the fact that a warrant has been issued, and shall show the warrant to the defendant as soon as possible."

M.D.R. 706 d. provides:

> "Promptly after his arrest the defendant shall be given a copy of the warrant by the arresting officer."

M.D.R. 709 a. directs:

> "A defendant shall be taken before a conveniently available judicial officer without unnecessary delay and in no event later than the earlier of (1) twenty-four hours after [the defendant's] arrest or (2) the first session of court after the defendant's arrest upon a warrant . . . ."

The appellant would have us rule that these provisions are mandatory and that a failure to comply with them must automatically require us to suppress any statement obtained

while the accused is being illegally detained. We cannot accept his suggestion. First, the trial court had before it the testimony of the police officers that they did not comply with the requirements of the rule because the defendant appeared ill and was returned to his detention cell after his Miranda rights had been given to him the first time. Some credence can be given to this contention since the officers, as anxious as they were to get a statement, made no effort to question the accused until the following morning. Had the warrants been delivered, we can conceive of able counsel complaining bitterly that the police were sufficiently impressed with appellant's illness not to question him but rather had merely complied *pro forma* with the provisions of the District Rules at a time when the appellant could not understand what was going on because of his physical condition.

Second, we do not believe, after our own independent review of the record in light of the totality of circumstances here existing, that the sanctions of the exclusionary rule should apply. So far as the warrant is concerned, it is conceded that the police notified the accused that they wished to question him about the Acme Market robbery immediately after he was taken into custody. Maryland District Rule 706 provides no sanctions for its violation and in the absence of such provision it is procedural only and is at best one of the matters to be considered by the court in determining whether the statements obtained by the police are the product of free will or of a will overborne by official misconduct. *See Jackson v. State,* 8 Md. App. 260, 259 A. 2d 587 (1969), *cert. denied,* 257 Md. 734 (1970).

We note also that the legislature has addressed itself to the problem of the failure to deliver a copy of the warrant in Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 617, where the only penalty prescribed for a failure to deliver a true copy of the warrant *within six hours after the copy has been demanded* is the forfeiture of $500 by the officer or other person neglecting or refusing to deliver a true copy of the warrant to the person detained. The absence of demand has been the basis of rejecting similar arguments before this

Court and there is no evidence of demand in this record. *See Stackhouse v. State*, 1 Md. App. 399, 230 A. 2d 358 (1967), citing 4 Anderson, *Wharton's Criminal Law and Procedure*, Section 1617, page 282.

Nor, after our examination of the totality of the circumstances, do we find any necessity for applying the exclusionary rule because of the alleged violation of the requirement of M.D.R. 709 a. that the accused be taken before a judicial officer within the above-mentioned time frame. There was testimony from both the police and the appellant from which the finder of fact could conclude that the appellant was taken before a judicial officer on January 31, 1975, after the Acme statement, and on February 1, 1975, after the Rainbow Cleaners statement — both within 24 hours of the arrest for each offense. The original arrest on January 30, 1975 was for the Acme Market robbery only. In addition, if there was in fact a technical violation of the Rule, the circumstances of the illness of the accused and the suspension of questioning for that reason would be a justifiable excuse for the failure to comply strictly with the Rule. Here, also, we find no sanction provided for a failure to comply with the Rule and are required only to consider a violation of the rule as one of the elements to be included in testing the voluntariness of the statements.

We conclude that the provisions of Maryland District Rules 706 and 709 are not mandatory and that their violation, vel non, does not require suppression of a statement obtained in the course of a custodial interrogation. Rather, the failure to deliver a warrant under M.D.R. 706 and the failure to produce an accused before a judicial officer under the M.D.R. 709 guidelines are two of the factors to be considered in testing the voluntariness of a subsequent statement under the totality of the circumstances test. Our own independent review of the record convinces us that the arrest in this case was lawful and that the statement obtained by the police was the product of the free will of the accused knowingly and voluntarily given.

## I(b).

The appellant urges that the State has not met its burden of proving by a preponderance of the evidence that the statements admitted into evidence were freely and voluntarily made. *Lego v. Twomey*, 404 U. S. 477, 92 S. Ct. 619, 30 L.Ed.2d 618 (1972). The trial court's finding of voluntariness must appear in the record with unmistakable clarity before the statement may go to the jury for its ultimate determination of whether, beyond a reasonable doubt, the statement was freely and voluntarily made. *Sims v. Georgia*, 385 U. S. 538, 87 S. Ct. 639, 17 L.Ed.2d 593 (1967); *Mulligan v. State*, 18 Md. App. 588, 308 A. 2d 418 (1973).

The appellant, at the suppression hearing, told a lurid tale of alleged threats of violence and coercion including being shown a gun rack with the suggestion that its contents might be used if the police were displeased with the appellant's cooperation. The police allegedly told the appellant that if he failed to make a statement he might be released and shot and they supposedly took advantage of his illness, caused by his withdrawal from narcotics, to extract the confessions. All of his allegations including these and others were rebutted by the police officers.

A confession is not inadmissible in evidence merely because the accused is under the influence of a narcotic drug, although the condition of the accused is a factor to be considered. *Hopkins v. State*, 19 Md. App. 414, 311 A. 2d 483 (1973), *cert. denied*, 271 Md. 738 (1974); 3 *Wharton's Criminal Evidence*, Section 689 (13th ed. 1973). The Court of Appeals held in *Bryant v. State*, 229 Md. 531, 185 A. 2d 190 (1962), that confessions made while under the influence of self-administered narcotics may be admitted in evidence against the accused.

The trial judge in this case was presented at the suppression hearing with two dramatically opposite versions of what occurred prior to and at the time of the confession. He chose to believe the State's version of the incidents. On our constitutionally mandated independent appraisal of the entire record at the suppression hearing, we are not

convinced that the trial judge's conclusion was wrong. *Davis v. North Carolina,* 384 U. S. 737, 86 S. Ct. 1761, 16 L.Ed.2d 895 (1966); *Hebb v. State,* 31 Md. App. 493, 356 A. 2d 583 (1976); *Ponds v. State,* 25 Md. App. 162, 335 A. 2d 162 (1975); *Hopkins v. State, supra; Mulligan v. State, supra; Layman v. State,* 14 Md. App. 215, 286 A. 2d 559 (1972). Nor do we find reversible error because the trial judge failed to announce that he found the State had met its burden of proving by a preponderance of the evidence the voluntariness of the statements. *Hebb v. State, supra,* is authority for the proposition that because the trial judge is presumed to know the law, he will be deemed to have found the statement voluntary by a preponderance of the evidence absent an indication to the contrary.

We conclude from the totality of the circumstances that the statements in this case were the product of the appellant's free will, and were knowingly, freely and voluntarily made and were, therefore, properly submitted to the ultimate trier of the facts, the jury, for its consideration.

II.

The appellant argues that the trial court erred in refusing to exclude in-court identifications of the appellant where such identifications were the product of impermissibly suggestive prior photographic identifications. The Supreme Court in *Simmons v. U.S.,* 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968), and *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967), held that an identification procedure was violative of due process whenever it was so suggestive that under the totality of the circumstances the procedure utilized resulted in a very substantial likelihood of irreparable misidentification. In *Neil v. Biggers,* 409 U. S. 188, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court held that even though an identification might be suggestive it was not violative of due process unless it was also unreliable. The Court laid down a five factor test for the determination of the reliability of the identification: the opportunity of the witness to view the accused at the time of the crime; the witness' degree of

attention; the accuracy of prior description; the level of certainty expressed by the witness; and the length of time between the crime and confrontation. *See: Foster and Forster v. State,* 272 Md. 273, 323 A. 2d 419 (1974).

The trial court was called on to determine whether under the totality of the circumstances the in-court identification was by clear and convincing evidence independent of the impermissibly suggestive prior photographic identifications of the accused. *Smith and Samuels v. State,* 6 Md. App. 59, 250 A. 2d 285 (1969), *cert. denied,* 254 Md. 720 (1969) (as to Smith), 255 Md. 743 (1969) (as to Samuels).

The record disclosed that the appellant was identified in court by two witnesses: Robin Woolford, who was shot during the Rainbow Cleaners robbery, and Stephen Bloss, who was a store detective employed by Acme Market. There is testimony that Woolford had an opportunity to view the accused who was not more than a few feet away in a well lighted premises for three to four minutes; that the description he gave to the police was accurate and detailed; and that when a photograph of the accused was included in a series shown to him some 20 days after the robbery, he identified the appellant. It is also true that on at least one other occasion he was alleged to have identified another person as the culprit and that under cross-examiantion he stated that his in-court identification was based in part on his recollection of events and in part on his recollection of the photographic identification. We conclude that there was clear and convincing evidence independent of the photographic identification to justify a submission of the facts to the jury. The weight of the evidence of identification was a matter to be determined by the triers of the fact.

Bloss was a store detective trained to observe people. There is evidence that he saw the appellant twice with the aid of the high beams of his own automobile headlights; that the description given to the police was sufficiently accurate to cause them to include the appellant's photograph in the first spread of pictures shown to Bloss; and that Bloss immediately identified the accused the same night of the

robbery. Bloss' photographic identification was suppressed because the photograph of the appellant shown to him had written on it the date of the robbery. The photographic identification was not offered into evidence by the State. Bloss stated that his in-court identification was primarily made on his memory of the man he saw that night although he admitted his identification was based on both his recollection of the event and the recollection of the photographic identification. Again under the totality of the circumstances the in-court identification was properly submitted to the jury for its consideration.

### III.

The appellant complains finally that the trial court erred in failing to grant a mistrial because of inflammatory and prejudicial arguments by the prosecutor to the jury. He suggests that throughout the State's closing argument the State's Attorney attempted to arouse the passions of the jury. Our reading of the State's argument does disclose some excesses on the part of the zealous prosecutor, but it also discloses that the trial court was in firm control of the proceedings and where necessary gave instructions and cautions to the jury as to the offending statements. Our concern is necessarily limited to whether the jury was actually misled or influenced in this case to the prejudice of the accused. *See: Pierce and Jackson v. State,* 34 Md. App. 654, 369 A. 2d 140; *Wilhelm v. State,* 272 Md. 404, 326 A. 2d 707 (1974); *Wood v. State,* 192 Md. 643, 65 A. 2d 316 (1949).

We think this case clearly falls within the ambit of *United States v. Socony Vacuum Oil Co.,* 310 U. S. 150, 240, 60 S. Ct. 811, 852, 84 L. Ed. 1129, 1177 (1940), where the Supreme Court said:

"Of course appeals to passion and prejudice may so poison the minds of jurors even in a strong case that an accused may be deprived of a fair trial. But each case necessarily turns on its own facts. And where, as here, the record convinces us that these statements were minor aberrations in a prolonged

trial and not cumulative evidence of a proceeding dominated by passion and prejudice reversal would not promote the ends of justice."

Applying the standards delineated in the cases cited we find no prejudice to the accused and no reversible error.

*Judgments affirmed.*
*Costs to be paid by appellant.*