WILLIAM BAKER ALIAS ORLANDO LITTLE *v.* STATE OF MARYLAND

[No. 788, September Term, 1977.]

*Decided March 13, 1978.*

---

134

The cause was argued before GILBERT, C. J., and THOMPSON and MOORE, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Harvey Greenberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Representative James Madison introduced at the first congress, on June 8, 1789, sixteen (16) amendments to the Constitution of the United States. Four (4) of the amendments did not survive congressional debate, and two (2) failed because the States did not ratify them. The remaining ten (10), in substantially the same form as proposed by Madison,

became known as "The Bill of Rights." [1] Interestingly, one (1) of the suggested amendments that was defeated in the Congress would have prohibited "the states from infringing on freedom of conscience, press, and jury trial." [2] The Bill of Rights was, in the beginning, a protection against the federal government but not the States. Violations of the rights of the individual by the State were protected only to the extent provided in the State constitution or Declaration of Rights.[3]

The Fourth Amendment, part of Madison's original package, provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall [4] not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Declaration of Rights adopted in Maryland afforded the people, through Article 26, protection against general warrants and required an oath or affirmation as a condition precedent to the issuance of a search and seizure warrant.

Both the Fourth Amendment and Article 26, arose from the same historical background, *Givner v. State,* 210 Md. 484, 124 A. 2d 764 (1956); *Salmon v. State,* 2 Md. App. 513, 235 A. 2d 758 (1967), and are to be read as being *in pari materia.*[5] *Givner v. State, supra; England v. State,* 21 Md. App. 412, 320 A. 2d 66 (1974), *aff'd,* 274 Md. 264, 334 A. 2d 98 (1975).

Notwithstanding, the Supreme Court's use of the Due Process Clause of the Fourteenth Amendment in *Mapp v.*

---

1. Bernard Schwartz, *The American Heritage History of The Law in America,* ch. II (1974).
2. *Id.*
3. *Id.*
4. According to Schwartz, Madison "wrote a mandatory imperative into the amendments, substituting the word 'shall' for the 'oughts' and 'ought nots' that had characterized earlier documents guaranteeing similar rights." *See, e.g.,* Maryland Declaration of Rights Articles 6-12, 14-19, 21-23, 25, 26, 30, 32, 36, 37, 39-43, wherein the softer "ought" or "ought not" has been used.
5. This is so even though Article 26 is not couched in the mandatory imperative as is the Fourth Amendment. *See* n. 4, *supra.*

*Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), as the vehicle through which to apply the strictures of the Fourth Amendment to the States, and with it the " 'fruit of the poisonous tree' " doctrine, *Wong Sun v. United States,* 371 U. S. 471, 488, 83 S. Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963), Maryland did not initially follow that doctrine. *Mefford v. State,* 235 Md. 497, 201 A. 2d 824 (1964); *Prescoe v. State,* 231 Md. 486, 191 A. 2d 226 (1963). In those cases, the majority of the Court reasoned that the "poisonous tree" doctrine or exclusionary rule discussed in *Wong Sun v. United States, supra,* and *Mapp v. Ohio, supra,* did not apply to the States but was limited in its scope to federal proceedings.

As a result of *Mefford* and *Prescoe,* the courts of this State ignored the federal exclusionary rule until 1974. At that time, the Court of Appeals, in *Everhart v. State,* 274 Md. 459, 337 A. 2d 100 (1975), *rev'g,* 20 Md. App. 71, 315 A. 2d 80 (1974), made it unmistakable that *Michigan v. Tucker,* 417 U. S. 433, 445, 94 S. Ct. 2357, 2364, 41 L.Ed.2d 182, 193-94 (1974) and *Alderman v. United States,* 394 U. S. 165, 89 S. Ct. 961,. 22 L.Ed.2d 176 (1969), erased the doubt that had existed, and the " 'fruit of the poisonous tree' " doctrine, *Wong Sun v. United States,* 371 U. S. at 488, 83 S. Ct. at 417, 9 L.Ed.2d at 455, became the law of Maryland.

The primal thrust of this appeal is the application *vel non* of the exclusionary rule — the "fruit of the poisonous tree" doctrine — to the judicial identification of the appellant.

After a hearing on a motion to suppress, Judge Shirley B. Jones, in the Criminal Court of Baltimore, ruled that the arrest of the appellant, William Baker, alias Orlando Little, was not founded on probable cause. She, therefore, excluded from the case any identification of appellant, based upon a photograph made of him subsequent to that arrest. While helpful to appellant, the exclusion of the photographic identification was more of a panache than a victory because the judge found that there was ample evidence that the judicial identifications made by the witnesses were bottomed on evidence that was independent of the baneful photograph. Appellant, however, contends that his illegal arrest precludes *any* identification of him, so that he should in no way be

connected with the offense and must be freed. The argument advanced by appellant may be styled as the "but for" approach. "But for" the illegal arrest he would not have been caught and, *ergo,* could not have been identified as the culprit.

Before explaining why we reject that absonant argument with its iniquitous result, we set out the fabric from which the appeal has been tailored.

At about 2:45 p.m., on July 23, 1975, Howard Katz an insurance agent, was robbed by two (2) men in the 200 block of East Chase Street in Baltimore City. One of the felons was armed with a sawed-off shotgun. When the police arrived, the victim and two witnesses, gave descriptions of the armed robber. Phillip Hawkes, a witness did not actually see the robbery, but he "got a real good look" at the person who carried the weapon as that person left the area at a "dog's trot." Katz was within a few feet of the robber for one (1) to five (5) minutes and looked directly at the robber's face. Scott, a witness and a former Baltimore County police officer, who was with Katz at the time stared directly at the robber for a period of "no less than one and no more than five" minutes.

Pursuant to a tip from an unidentified informant, the appellant was arrested on July 29, 1975, at the home of his girl friend. The arrest was made without the benefit of a warrant. In holding, as we have already noted, the arrest to be illegal, the trial judge believed there was a lack of probable cause because the information passed on to the arresting officer by the informant failed to pass muster under *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964). Moreover, the judge was not satisfied that there was knowing consent to the search of the girl friend's apartment, where appellant was found, nor that there were exigent circumstances which excused the obtaining of a search warrant.

Prior to the arrest and booking of the appellant, his name was not known to the police.[6] The next day, appellant's photograph was shown to Katz and Scott, who identified it

6. It was disclosed at the hearing on the motion to suppress and the trial that appellant was wanted for a parole violation, failing to report.

as that of the perpetrator of the robbery. Thereafter, Katz and Scott saw the appellant several times in various court proceedings. Hawkes saw the appellant in the City Jail where he was confined while awaiting trial.[7] The two (2) victims and Hawkes testified, during the hearing on the motion to exclude any in-court identification, that their identifications would be based solely on their recollection of the incident and not on any subsequent viewing of appellant or his photograph. During the trial, Katz, Scott, and Hawkes made in-court identifications of the appellant.

Past Maryland cases have held that in-court identifications resulting directly from illegal arrests are not excluded from evidence. Those decisions, however, must be re-evaluated in light of both the subsequent adoption by the Court of Appeals in *Everhart v. State, supra,* of the "fruit of the poisonous tree" exclusionary rule and of the recent Supreme Court decisions related to that rule. Our reappraisal leads us to conclude that when an illegal arrest is made in good faith and is neither an investigatory nor sham arrest, judicial identification is not to be barred on the basis of its being the "fruit of the poisonous tree."

Two (2) 1968 decisions of this Court held that in-court identifications were not precluded by the illegal arrests of the individuals concerned. *Boucher v. Warden,* 5 Md. App. 51, 245 A. 2d 420 (1968); *Hartley v. State,* 4 Md. App. 450, 243 A. 2d 665 (1968), *cert. denied,* 251 Md. 749 (1969), *cert. denied,* 395 U. S. 979, 89 S. Ct. 2136, 23 L.Ed.2d 768 (1969). In *Boucher, supra,* we said that, notwithstanding the in-court identification, "no fruits of the arrest were received in evidence against the applicant. . . ." *Boucher v. Warden,* 5 Md. App. at 55, 245 A. 2d at 423.

Those cases obviously were decided prior to Maryland's belated recognition in *Everhart, supra,* of *Wong Sun, supra,* and its siblings.

We applied *Wong Sun, supra,* through *Everhart, supra,* in *Ryon v. State,* 29 Md. App. 62, 349 A. 2d 393 (1975), *aff'd,* 278

---

7. According to Hawkes, the charges against him unrelated to this case were stetted.

Md. 302, 363 A. 2d 243 (1976). The exclusionary rule of *Wong Sun, supra,* was explicated in *In re Appeal No. 245,* 29 Md. App. 131, 349 A. 2d 434 (1975) as follows:

> "On 14 January 1963 the Supreme Court of the United States decided *Wong Sun v. United States,* 371 U. S. 471 [83 S. Ct. 407, 9 L.Ed.2d 441 (1963)]. Nearly half a century before, the Court held that evidence seized during a search unlawful under the Fourth Amendment could not constitute proof against the victim of the search. *Weeks v. United States,* 232 U. S. 383 [34 S. Ct. 341, 58 L. Ed. 652] (1914). The exclusionary prohibition extended as well to the indirect as the direct products of such invasions. *Silverthorne Lumber Co. v. United States,* 251 U. S. 385 [40 S. Ct. 182, 64 L. Ed. 319] (1920). The exclusionary rule had traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It followed from the Court's holding in *Silverman v. United States,* 365 U. S. 505 [81 S. Ct. 679, 5 L.Ed.2d 734] (1961), that the Fourth Amendment may protect against the overhearing of verbal statements as well as the more traditional seizure of tangible evidence." 29 Md. at 140, 349 A. 2d at 439.

Long before the Fourth Amendment was held, in *Mapp v. Ohio, supra,* to apply to the States, Mr. Justice Holmes, in *Silverthorne, supra,* wrote that the exclusionary rule mandates not only that evidence obtained in violation of the tenets of the Fourth Amendment may "not be used before the Court but that it shall not be used at all." 251 U. S. at 392, 40 S. Ct. at 183, 64 L. Ed. at 321. "The Magnificent Yankee," [8] however, penned a caveat that declared, "[o]f course this does not mean that the facts thus obtained become sacred and inaccessible." *Id.*

---

8. Emmet Lowery (written 1945).

The *Wong Sun* Court went further and stated:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' *Maguire Evidence of Guilt,* 221 (1959)." 371 U. S. at 487-88, 83 S. Ct. at 417, 9 L.Ed.2d at 455.

The three (3) generally recognized exceptions to the application of the fruit of the upas tree are: 1) where the evidence sought to be introduced has an independent source, or 2) the evidence would have inevitably been discovered, or 3) where "the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." *In re Appeal No. 245,* 29 Md. App. at 140, 349 A. 2d at 440. *See Bartram v. State,* 33 Md. App. 115, 364 A. 2d 1119 (1976), *aff'd,* 280 Md. 616, 374 A. 2d 1144 (1977). *See also Washburn v. State,* 19 Md. App. 187, 310 A. 2d 176 (1973).

For the purpose of determining whether the rule excluding evidentiary "fruit of the poisonous tree" should be applied to a particular situation, the Supreme Court has adopted a balancing test. The Court, in *Stone v. Powell,* 428 U. S. 465, 96 S. Ct. 3037, 49 L.Ed.2d 1067 (1976), said that "[t]he primary justification for the exclusionary rule . . . is the deterrence of police conduct that violates Fourth Amendment rights." 428 U. S. at 486, 96 S. Ct. at 3048, 49 L.Ed.2d at 1083. The deterrent effect of the exclusionary rule must be weighed against the harm which society suffers when the particular evidence cannot be used in a judicial proceeding. Thus, "[t]he application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra,* 414 U. S. 338, 348, 94 S. Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974). Areas to which the

exclusionary rule clearly has not been extended include: grand jury proceedings, *United States v. Calandra, supra;* the use of the evidence to impeach, *Walder v. United States,* 347 U. S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954); and the raising of illegal search and seizure claims in federal habeas corpus reviews of state court convictions, *Stone v. Powell, supra.* The reason for the nonapplication of the rule is that the deterrent effect in those situations would be minimal.

The exclusionary rule is a potent judicial weapon fashioned to restrain police trespass on constitutionally protected rights, which is selectively used and discriminately applied. It was not created as a "bonus," for the criminal, taking the form of the keys to the jail, which might well happen if courts were to employ its severe sanctions indiscriminately. *Stone, supra,* makes clear that:

> "Application of the rule . . . deflects the truthfinding process and often frees the guilty. The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice." 428 U. S. at 490-91, 96 S. Ct. at 3050, 49 L.Ed.2d at 1085-86. (Footnotes omitted.)

Chief Justice Burger, concurring in *Stone, supra,* said that the burden should be on those who propose the application of the exclusionary rule to show that there is a real deterrent effect and that the purpose outweighs the "costs" of the rule. *Id.* at 499-500, 96 S. Ct. at 3054, 49 L.Ed.2d at 1091.

The *Stone* Court reaffirmed its traditional approach to the related problem of the illegal forcible obtention of personal jurisdiction. They did not "retreat from the proposition that judicial proceedings need not abate when the defendant's

person is unconstitutionally seized, *Gerstein v. Pugh,* 420 U. S. 103, 119, [95 S. Ct. 854, 865-66, 43 L.Ed.2d 54, 68] (1975), *Frisbie v. Collins,* 342 U. S. 519, [72 S. Ct. 509, 96 L. Ed. 541] (1952)." *Id.* at 485, 96 S. Ct. at 3047, 49 L.Ed.2d at 1082.

Applying the *Wong Sun, supra,* doctrine to the case now before us, we hold that the in-court identification of the appellant was correctly admitted into evidence by Judge Jones. Perspicuously, *Wong Sun, supra,* does not apply a "but for" test to evidence. Rather, the question is whether the evidence has been obtained by exploiting the illegality. Exploitation must have a different meaning than "but for." Learning the identity of a person otherwise lost in a sea of faces, as a result of an illegal arrest not solely for that purpose, is not "exploitative," but, rather, is the natural result of any arrest. As stated in *United States v. Dionisio,* 410 U. S. 1, 14, 93 S. Ct. 764, 771, 35 L.Ed.2d 67, 79 (1973),

> "No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world."

*See also, Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967).

Classification of learning the appellant's identity and, hence, the judicial identification, as "exploitative" would be inconsistent with the Supreme Court's reaffirmation of the principle that illegal gaining of personal jurisdiction of a defendant does not prohibit the State from placing that individual on trial. *Stone v. Powell, supra.*

Other courts have applied the same reasoning. In *Commonwealth v. Garvin,* 448 Pa. 258, 293 A. 2d 33 (1972), which involved a fact situation like the one before us, the court said:

> "No law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accusors. Thus, we conclude that the only effect of the illegal arrest was to hasten the inevitable confrontation and not to influence its outcome." *Id.* at 264, 293 A. 2d at 37.

Similarly, in *Crews v. United States,* 369 A. 2d 1063, 1068 (D.C. Ct. of App. 1977), involving another situation like that before this Court, it was said, quoting in part from *Bond v. United States,* 310 A. 2d 221 (D.C. Ct. of App. 1973):

"[ ' ]Even assuming the illegality of the prior arrest, we regard [appellant's] position as untenable. In the first place, he points to no particular "fruit" of this alleged "poisonous tree" which was introduced into evidence against him. This doctrine does not operate so broadly as to bar all subsequent prosecutions. Rather it operates on particular evidence, either tangible or testimonial, and, if properly invoked, causes the exclusion only of such evidence. *See Wong Sun v. United States [supra].* Here, it would seem that appellant would have us hold that he himself is the "fruit" and accordingly he should have been excluded but "[w]e have ruled on more than one occasion that a court will not inquire into the manner in which an accused is brought before it, and that the legality or illegality of an arrest is material only on the question of suppressing evidence obtained by the arrest." [Quoting *District of Columbia v. Jordan,* D.C.App., 232 A.2d 298, 299 (1967).] ' [*Bond v. United States,* 310, A.2d at 224-25.] *See District of Columbia v. Perry,* D.C.App., 215 A.2d 845, 847 (1966); *Boucher v. Warden,* 5 Md.App. 51, 245 A.2d 420, 423-24 (1968). *Cf. M. A. P. v. Ryan,* D.C.App., 285 A.2d 310, 315 (1971). Our conclusion rested upon the well-established principle that, given a fair trial, the fact of an illegal arrest will not vitiate a conviction. *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). While it is true, as appellant notes, that the *Ker-Frisbie* doctrine has been the subject of some criticism [*see, e.g., United States v. Toscanino,* 500 F.2d 267, *rehearing en banc denied,* 504 F.2d 1380 (2d Cir. 1974); *United States v. Edmons,* 432 F.2d 577, 583 (2d Cir. 1970)], we have

> no doubt as to its continued validity. *See Stone v.*
> *Powell,* 428 U.S. 465, 96 S.Ct. 3037, 3047, 49 L.Ed.2d
> 1067 (1976); *Gerstein v. Pugh,* 420 U.S. 103, 119, 95
> S.Ct. 854, 43 L.Ed.2d 54 (1975); *Stevenson v.*
> *Mathews,* 529 F.2d 61, 63 (7th Cir.), *cert. denied,* 426
> U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976)."

Even if we were to assume, *arguendo,* that the in-court identification was in some way fruit picked from the upas tree, that identification testimony would not be excluded. This is so because the deterrent effect of the exclusion of the identification on police conduct would be grossly outweighed by the public detriment. *Stone v. Powell, supra.*

The Supreme Court said, in *Michigan v. Tucker,* 417 U. S. at 446, 94 S. Ct. at 2365, 41 L. Ed. at 194 (1974), the law,

> "cannot realistically require that policemen
> investigating serious crimes make no errors
> whatsoever. The pressures of law enforcement and
> the vagaries of human nature would make such an
> expectation unrealistic. Before we penalize police
> error, therefore, we must consider whether sanc-
> tion serves a valid and useful purpose."

The exclusion of evidence in a situation where the police have attempted, in good faith, to follow the law may have little deterrent effect on future police conduct except, perhaps the reverse of that desired. *Michigan v. Tucker,* 417 U. S. at 447, 94 S. Ct. at 2365, 41 L. Ed. at 194-95. *Crews v. United States, supra.* There is no evidence in the record before us of any lack of good faith on the part of the officers involved in the apprehension of the appellant. The detriment to the public of excluding all in-court identification of the appellant would be a blanket prohibition of prosecution for the crime. Where, as here, the identity of an individual is characterized as the "illegal fruit," "in the final analysis," what is sought "is no less than an immunity from any prosecution." *Crews v. United States,* 369 A. 2d at 1072. If this Court were to adopt the rationale urged by appellant, the societal harm would be far greater than in the ordinary exclusionary rule situation where the prosecution must use other untainted evidence.

Usually in such cases there is the possibility of prosecution based on other sources of evidence.

We hold that the trial judge properly admitted into evidence the in-court identification made of appellant by the victim and the two (2) witnesses. It is clear that the identifications were based upon their independent observations of the appellant at the time of the robbery and not upon the tainted photograph. *Foster & Foster v. State,* 272 Md. 273, 323 A. 2d 419 (1974); *Johnson v. State,* 36 Md. App. 162, 373 A. 2d 300 (1977), certiorari granted September 7, 1977; *Dobson v. State,* 24 Md. App. 644, 335 A. 2d 124 (1975), *cert. denied,* 275 Md. 747 (1975).

Appellant next contends that the trial court improperly denied his motion for a mistrial. The motion was based on allegedly prejudicial remarks by the prosecutor during cross-examination of the appellant. Judge Jones sustained the objections and instructed the jury to disregard the questions. Her instructions to the jury appear sufficiently curative. Judge Jones reinforced her instruction to ignore the prosecutor's remarks when she stated that

> "when something is stricken from the record it means literally that, that it is stricken from the record and you must completely ignore anything which has been stricken from the record. . . . [Y]ou [the jury] are to ignore that portion of the testimony or the question, whatever it might have been."

Appellant avers, however, that the cumulative effect of the prosecutor's remarks, despite Judge Jones's curative actions, was sufficiently prejudicial to deny him a fair trial. Judge Jones was, in presiding over the trial, better able than this Court to judge the effect of the improper remarks upon the jurors. She stated,

> "I am not satisfied at this point that there has been irreparable damage to the defendant. I'm satisfied the questions were improper, and that's why I sustained the objections, but I'm going to instruct the jury. I think, as I say, it is not irreparable and prejudicial that I can see at this point."

146

Inasmuch as the granting or denial of a motion for a mistrial is within the sound discretion of the trial court, this Court will not overturn the trial judge's decision unless there was a manifest abuse of discretion. *Wilhelm v. State,* 272 Md. 404, 326 A. 2d 707 (1974); *James v. State,* 31 Md. App. 666, 358 A. 2d 595 (1976). We can find no such abuse of discretion in the instant case.

*Judgment affirmed.*
*Costs to be paid by appellant.*