RICHARD G. LETT a/k/a Thomas Richard Lett
v. STATE OF MARYLAND

[No. 1040, September Term, 1981.]

*Decided June 2, 1982.*

The cause was argued before WEANT and BISHOP, JJ., and JAMES S. GETTY, Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Joseph H. Rouse, Assigned Public Defender,* for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Barry A. Hamilton, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

On 3 April 1980 Richard G. Lett, a/k/a Thomas Richard Lett, appellant, was indicted for first degree rape, second degree rape, first degree sexual offense, second degree

sexual offense, and kidnapping. A jury found Lett guilty on all counts; the judge merged second degree rape into first degree rape, and second degree sexual offense into first degree sexual offense. On 15 May 1981 appellant was sentenced to life imprisonment for first degree rape, a concurrent life term for first degree sexual offense, and 25 years for kidnapping, this sentence to run consecutively with the life sentences. After his sentence was affirmed by a sentence review panel, a timely appeal to this Court was filed from the decision of the Circuit Court for Montgomery County.

Appellant presents seven prolix questions for us to consider. Seeking to be more laconic, we will attempt to unravel and clarify each point as we deal with it.

## Appeal

### I.

Lett first contends that the trial court abused its discretion by refusing to grant a continuance of his suppression hearing. He alleges that he was constrained to request a continuance when the state failed to produce as witnesses at that hearing all four New Jersey police officers who participated in the appellant's arrest and subsequent search of his motel room and vehicle. Instead the prosecutor produced only three of the four.

The decision as to whether or not to grant a continuance is within the sound discretion of the trial court and will only be reversed on appeal if there is an abuse of that discretion. The Court of Appeals has outlined the criteria to be used in determining this issue as follows:

> To show such an abuse of discretion and prejudice for failure to continue a case because of the absence of witnesses, the party requesting the continuance should show: that he had a reasonable expectation of securing the evidence of the absent witness or witnesses within some reasonable time; that the evidence was competent and material, and he

believed that the case could not be fairly tried without it; and that he had made diligent and proper efforts to secure the evidence. [Citations omitted.]

*Jackson v. State,* 214 Md. 454, 459, 135 A.2d 638, 640 (1957), *cert. denied,* 356 U.S. 940 (1958).

First, the record fails to reveal whether the appellant had a reasonable expectation of securing the presence of Lt. Calabrese, the missing officer, within a reasonable time. There is no indication of why he failed to appear or when he could be expected to be present as a witness. *See Taylor v. State,* 226 Md. 561, 565, 174 A.2d 573, 575 (1961).

Second, the only effort made by Lett to show that the officer's expected testimony was competent and material and that the case could not be fairly tried without it was through a proffer that Lt. Calabrese would testify to the fact that he authorized entry into the motel room and that he was present during the search of the automobile. We think that this proffer does not establish that the Lieutenant's testimony would be necessary to assure a fair trial for the appellant. There were two other police officers who did testify and who were able to say that Calabrese authorized the entrance into the motel room as they were present at the time. Likewise there was another officer at the hearing who saw Lt. Calabrese make the search of the vehicle. Consequently the proffered testimony would have been merely cumulative.

Third, the record does not reveal any attempt which the appellant made toward securing Lt. Calabrese as a witness other than to say that "we requested them to produce four and through an oversight only produced three." *See Jackson v. State,* 288 Md. 191, 194, 416 A.2d 278, 281 (1980). The record does not disclose who was responsible for the oversight, *i.e.,* the state or the defense. In fact, defense counsel concedes that he had not interviewed the missing witness which procedure, in our view, would be a vital step toward making a diligent and proper effort to secure that evidence.

Finally, we note that the fact that all of the police officers involved were from New Jersey is another cogent factor in

a continuance. The trial judge properly voiced concern over the expense and inconvenience that would be involved in bringing the police officers to Maryland a second time. Under all the circumstances of the instant case, we fail to perceive any abuse of discretion on the trial court's part in refusing to grant a continuance.

## II.

Lett's second contention is that his arrest without a warrant was illegal, unreasonable, and a violation of his Fourth Amendment rights. Appellant relies on *Payton v. New York,* 445 U.S. 173 (1980); this reliance, however, is misplaced. In *Payton,* the Supreme Court held that a warrantless arrest could not be effectuated in one's home, even upon a showing of probable cause, absent either consent or exigent circumstances. In the instant case, however, there were both consent and exigent circumstances.

In our view the trial judge correctly disposed of this proposition in his Memorandum and Order dated 12 December 1980. We quote therefrom:

> The law of the place of the arrest governs in determining the legality of an arrest, *Hager v. State,* 27 Md. App. 475 (1975). Therefore, New Jersey law would govern the resolution of these issues here. Under New Jersey law in a proper situation both consent of a qualified person with control over the premises entered, *State v. Miller,* 157 N.J. Super. 552, 388 A.2d 993 (1978), and exigent circumstances, *State v. Galvin,* 161 N.J. Super. 524, 391 A.2d 1275 (1978), are exceptions to the rule that warrantless searches and seizures are per se unreasonable. Mrs. Helman [the victim], by implication if not in express language, consented to the entry by the police of her motel room. While the record is unclear whether Mr. Lett's name or her name, or both, appeared on the motel registry, or whether he registered using her husband's name, it

is clear that she had perfect right to consent to the police entering the room. Once lawfully in the room, the officers had ample probable cause on the basis of Mrs. Helman's statements to arrest the Defendant.

Even assuming arguendo that there was no consent, the police were clearly justified in entering the motel room on the basis of exigent circumstances. The police responded to the victim's call by coming to the motel. There the victim told them that Lett had abducted her, that she believed he had a weapon, and that she thought he was wanted for armed robbery in either Florida or Maryland. Obviously, the police were fully justified in acting quickly to apprehend appellant without a warrant to prevent his escape.

Thus, appellant's warrantless arrest by the police was not illegal, unreasonable, or a violation of his Fourth Amendment rights, whether the arrest was based on consent or exigent circumstances.

### III.

Appellant next contends that the trial judge erred in admitting the evidence seized in the appellant's room during the warrantless search. The trial judge ruled that the items seized were in plain view as the police officers entered the motel room and that thus they were admissible as evidence. Again we agree with the trial court.

Relying on *Coolidge v. New Hampshire,* 403 U.S. 443 (1971), the Court of Appeals has enunciated the requirements for the applicability of the "plain view" exceptions to the exclusionary rule: evidence in plain view may be seized if "(1) the police have a prior justification for the intrusion; (2) they find the evidence in plain view; (3) they find it inadvertently; and (4) it is 'immediately apparent to the police that they have evidence before them,' . . .." *State v. Wilson,* 279 Md. 189, 195, 367 A.2d 1223, 1227 (1977). *See also State v. Boone,* 284 Md. 1, 10, 393 A.2d 1361, 1366 (1978). In the instant case, the police had justification for the

intrusion because allegedly Mrs. Helman, the victim, had been abducted and raped by appellant. Each of the items seized — the car keys, roll of adhesive tape, and women's shoes — were in plain view of the police and inadvertently found by them when they entered the motel room to arrest appellant. Finally, it was clear to the police that they saw evidence of the crime because the victim had told them that she had been bound with tape and transported to New Jersey in the trunk of a car. As the victim was shoeless when the officers first talked to her, they could easily have concluded that the pair of women's shoes had been worn by her. Thus the plain view exception is satisfied.

## IV.

Appellant's fourth contention is that the trial judge erred in determining that the initial illegal warrantless search of his vehicle did not taint the subsequent search of the same vehicle pursuant to a valid search warrant. He alleges that the evidence seized pursuant to the valid search was not purged of the primary defect caused by the illegality of the original search. *See Wong Sun v. United States,* 371 U.S. 471 (1963). We disagree.

This Court has explained that there are three generally recognized exceptions to the "fruit of the poisonous tree" doctrine: "1) where the evidence sought to be introduced has an independent source, or 2) the evidence would have inevitably been discovered, or 3) where 'the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint.' " *Baker v. State,* 39 Md. App. 133, 140, 383 A.2d 698, 701 (1978) (citations omitted). In the instant case, the search of the car pursuant to a warrant was independent of the original illegal warrantless search. Further, the affidavit filed in support of the warrant was not tainted by the illegal search because the affidavit was based almost exclusively on the testimony of the victim herself and was therefore independent of the evidence obtained from the illegal search. Consequently, the evidence discovered had a

source independent of the initial illegal entry into the vehicle.

## V.

Lett argues that the trial judge erred when he refused to reconsider appellant's motion to suppress at the beginning of trial. The basis for the motion was an alleged conflict between the testimony of the police officers at the suppression hearing and the report of Lt. Calabrese concerning the circumstances under which the police entered the motel room. The trial court ruled that the alleged conflict was immaterial because the judge determined that the victim consented to the entry and therefore the question of who opened the door to the room was irrelevant. Under these circumstances we find that the trial court's refusal to consider the renewed motion was not an abuse of discretion. *See Mathias v. State,* 284 Md. 22, 394 A.2d 292 (1978), *cert. denied,* 441 U.S. 906 (1979).

## VI. and VII.

Apparently relying on the confusion which has resulted from using the terms venue and jurisdiction interchangeably, the appellant is assailing the venue of this case under the guise of subject matter jurisdiction. He claims that the trial court erred in failing to grant his motion for judgment of acquittal because of the lack of the necessary proof of intent in order to show jurisdiction and in failing to instruct on the question of intent.

In an effort to bring some clarity to the "jurisdiction-venue" confusion the Court of Appeals in the case of *McBurney v. State,* 280 Md. 21, 31, 371 A.2d 129, 135 (1977), has had this to say:

> There are two facets to the jurisdiction of a court — jurisdiction over the subject matter and venue. With respect to the subject matter, within its county, a circuit court of this State has full common

law jurisdiction in all criminal cases committed in Maryland except where limited by law. Maryland Code (1974) Courts and Judicial Proceedings Article § 1-501. Venue, however, is the place of trial, or where a criminal trial may properly occur.

A perusal of these distinctions makes it clear that the appellant was directing his complaint against that of venue as distinguished from subject matter jurisdiction. As Judge Moore said for this Court in *State v. Jones,* 51 Md. App. 321, 325, 443 A.2d 967, 971 (1982), "Section 465 has no extra-territorial effect — it is simply a venue statute, . . . ." This being the case the appellant is too late in raising this objection. In this regard we call attention to the case of *Carter v. State,* 38 Md. App. 400, 381 A.2d 309, *cert. denied,* 282 Md. 730 (1978), at page 405, 381 A.2d 312, wherein this Court said: "Improper venue is a 'defense or objection' which, under Maryland Rule 725 (b), [now Rule 736c] must be raised by motion before trial. [Citations omitted.] If the defense is not raised by motion before trial, it is deemed waived." Maryland Rule 725 (b) (now Rule 736a).

Even assuming that the question of venue was properly raised below, we think that it was correctly decided in this case. Article 27, § 465 addresses the question of venue in such a situation as follows:

> If a person is transported by any means, with the intent to violate this subheading and the intent is followed by actual violation of this subheading, the defendant may be tried in the appropriate court within whose jurisdiction the county lies where the transportation was offered, solicited, begun, continued or ended.

In the instant case the court had for consideration several relevant facts pertaining to the question of venue. The appellant had made arrangements to meet the victim, Linda Helman, at the Germantown Inn located in Montgomery County on 14 March 1980. He met her at the parking lot there and after a brief preliminary, pulled her into his car,

locked the door and proceeded to tape her wrists. From Montgomery County they went to Frederick County where the appellant stopped his vehicle and forced Linda Helman into the trunk. Thereafter the appellant stopped at a motel located in Frederick County where he raped the victim and forced her to perform fellatio. Later he took her to New Jersey where the arrest was made.

There is little question that the evidence discloses that the appellant had the intent to commit rape when he conveyed the victim into Frederick County from Montgomery County, this intent being an essential element for conferring such venue. *Deinhardt v. State,* 29 Md. App. 391, 398, 348 A.2d 286, 290 (1975), *cert. denied,* 277 Md. 736 (1976). In any event the question of venue is for the court to decide and is not a subject for instruction to the jury.

Consequently we think that the judgments of the trial court should be affirmed.

### *Cross-Appeal*

The state has cross-appealed from the refusal of the trial court to sentence Lett under the mandatory sentencing provisions of Article 27, § 643B (c). It maintains that the mandatory provisions of this article should be used in sentencing by reason of the fact that it proved that Lett was convicted of two prior crimes of violence, having served one term of confinement for a crime of violence in a correctional institution. The problem arises in the trial court's construction of that statute which provides:

> Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the

sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11.

In refusing to follow the mandatory sentencing provisions the trial judge put a literal interpretation on the law. He found that, although the appellant had been convicted of two separate crimes of violence and had served one term of confinement, the convictions did not take place on two separate occasions. The court said "He [the appellant] was convicted on only one occasion, namely the date of November 10th . . . ." He reasoned that the two convictions did not qualify as separate occasions as provided by Article 27, § 643B (c).

It is the cross-appellant's contention that the trial court's interpretation of the statute in question leads to an anomalous situation wherein the appellant would be subjected to the rigors of the mandatory sentence were he to have been convicted on two separate days for the crimes which he committed rather than, as here, escape the more severe punishment because he was convicted of these separate crimes on the same day. The state asserts that this leads to an absurdity.

In the case of *Gatewood v. State,* 244 Md. 609, 617, 224 A.2d 677, 682 (1966), the Court of Appeals in a similar situation said: "That construction of the statute is neither sensible nor reasonable and manifestly leads to an absurdity, but, if that is its plain meaning and if the words are not fairly susceptible of another interpretation, we are not at liberty to depart from them." On the same page the judge commented:

A criminal statute must be strictly construed in favor of the defendant. *Grimm v. State,* 212 Md. 243, 246, 129 A.2d 128 (1957); *Fowel v. State,* 206 Md. 101, 107, 110 A.2d 524 (1955) and cases therein cited. Where the statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, the courts are not at liberty to insert or to delete words with a view toward making

the statute express an intention which is different from its plain meaning. *Fowel, supra,* 206 Md. at 105; *Pineland Lumber Company v. Miles,* 228 Md. 584, 587-88, 180 A.2d 870 (1962) and cases therein cited.

*See also Baltimore Building and Construction Trades Council AFL-CIO v. Barnes,* 290 Md. 9, 15, 427 A.2d 979, 982 (1981); *Amalgamated Casualty Insurance Co. v. Helms,* 239 Md. 529, 535, 212 A.2d 311, 316 (1965); *Glover v. State,* 14 Md. App. 454, 464, 287 A.2d 333, 338-39 (1972), *rev'd on other grounds, Goode v. State,* 41 Md. App. 623, 628 n.6, 398 A.2d 801, 804 n.6 (1979).

The Random House Dictionary of the English Language, 1979, defines "occasion" as "a particular time, esp. as marked by certain circumstances or occurrences." The same dictionary defines "separate" as being "unconnected; distinct; unique." Thus we conclude that the term "two separate occasions" has a plain meaning and is not fairly susceptible of an interpretation other than that of two unconnected, distinct, or unique times. While the state may get some comfort from the definition of "occasion" in Black's Law Dictionary, Fifth Edition, as being

> [t]hat which provides an opportunity for the causal agency to act. Meaning not only particular time but carrying ideal opportunity, necessity, or need, or even cause in a limited sense,

the same dictionary defines "separate" as being

> [i]ndividual, distinct, particular; disconnected. Generally used in law as opposed to "joint," though the more usual antithesis of the latter term is "several."

Together they give little succor in establishing the ambiguity needed by the state.

Here we feel obliged to comment that this Court previously had occasion to call attention to the fact that "[t]he

draftsmanship of the statute [§ 643B (c)] is patently inartful." *Calhoun v. State,* 46 Md. App. 478, 489-90, 418 A.2d 1241, 1249 (1980), *aff'd,* 290 Md. 1, 425 A.2d 1361 (1981).

In so doing we said through Judge Moore that

> In addition, we note that unless a defendant's two prior convictions occur on "two separate occasions" the predicates of § 643B (c) have not been satisfied. This is true even when the two prior convictions arise from totally separate incidents. Thus, a defendant who is convicted at one trial of several crimes of violence may escape the mandatory sentence of § 643B (c). In contrast, however, the mandatory life sentence provision, § 643B (b), requires only "three separate convictions." It does not require that the convictions be obtained on separate occasions. These discrepancies and variations are indicative of the need for legislative clarification of this statutory enactment. See McLee v. State, 46 Md. App. 472, 418 A.2d 1238 (1980).

*Id.* at 490 n.5, 418 A.2d at 1249 n.5. As we said there and we say now "[a]ny change, however, must be left to the legislature." *Id.* at 490, 418 A.2d at 1249. To this time the Legislature has not seen fit to make any change in this respect and hence we are prompted to assume that the statute says what it means. Consequently we are constrained to hold that the trial court correctly construed Article 27, § 643B (c) as it now exists.

> *Judgments affirmed.*
> *Costs are to be paid 1/2 by the appellant and 1/2 by Montgomery County.*