## ARTHUR EUGENE JACKSON *v.* STATE OF MARYLAND

[No. 53, September Term, 1969.]

*Decided December 9, 1969.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John J. Mitchell* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William L. Linthicum, Jr., State's Attorney for Montgomery County, Edwin H. W. Harlan, Jr., State's Attorney for Harford County, Andrew L. Sonner, Deputy State's Attorney for Montgomery County,* and *Donald G. Smith, Deputy State's Attorney for Harford County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Arthur Eugene Jackson, was convicted in the Circuit Court for Harford County by a jury, Judge Harry E. Dyer, Jr., presiding, of burglary, robbery and rape. He was sentenced to terms of 20 years, 10 years, and 20 years, respectively, the terms to run consecutively.

Appellant on appeal presents three questions for consideration. They are:

1. Was the appellant denied due process and equal protection when the trial judge permitted his alleged confession to be presented in evidence?
2. Was appellant prejudiced during the course of his trial when the trial judge permitted

an F.B.I. agent, not previously identified by the State in answers for discovery, to testify?

3. Was appellant denied due process when the trial judge failed to afford him his right of allocution prior to imposing sentence?

The testimony revealed that in the early morning of May 31, 1967, the victim was asleep in her home in Laytonsville, Montgomery County, Maryland. She had locked the doors to her home before retiring, and was awakened by a strange man who raped her and forced her to give him $55.00 in cash, after which he fled. The police were notified and their investigation revealed that access had been gained by breaking a pane of glass in the back door and unlatching it. In searching the premises they found a man's hat lodged between the victim's bed and the headboard attached thereto. The victim was unable to identify her assailant except that he was a Negro.

With the hat in their possession three Montgomery County detectives began an immediate search of the area. They stopped vehicles on the highway and visited homes in the neighborhood in an effort to locate the owner of the hat found in the victim's bedroom. After stopping at several houses, they arrived at appellant's home at 7:15 a.m. Appellant answered the door. He was shown the hat and asked if he owned one like it, to which he answered, "No." He was then asked if he had seen anyone wearing a hat like that and he said, "No." He was asked if he wore a hat like that and he replied, "No, I wear a black tammy." The hat was then shown to his mother, in his presence and in the presence of the three officers, and she stated, "I don't know but I believe that's the hat my boy has been wearing around here the last couple of days." At this point appellant stated, "No, I wear a black tammy." When asked where his black tammy was he said, "I don't know." He was immediately taken into custody and placed in the back seat of the police cruiser. Lieutenant Thear got in the back seat with

appellant and the other two detectives got in the front seat. Lieutenant Thear then told him that they were investigating a rape, but before any questions could be asked, he must be advised of his rights. He was given the full *Miranda* warnings, which were read to him from a form, DB-50, after which he was asked if he understood what had been read to him and he stated he did. When asked if he wanted an attorney he said, "No." As each question was asked, the officer checked off the answer. Appellant refused to sign the form, but each officer signed it and it was admitted in evidence at the trial. Appellant was then driven to the Rockville police station where he was processed and fingerprinted. A $5.00 bill was found in his wallet. Afterwards, he was given breakfast. After he had eaten, questioning began in the interrogation room. He was asked where the money was but he refused to answer. He was then told a search warrant would be obtained to search his home and the money would be found. He was left in the interrogation room while the search warrant was being prepared. Shortly thereafter, appellant rapped on the door and said he wanted to talk. Interrogation was resumed and appellant made a full oral confession. All of the officers testified that no threats, promises or inducements were made to the appellant prior to his confession or anytime.

I

Appellant challenges the admission into evidence of the oral confession given by him at the Rockville police station on the day of the crime. He contends that the questioning of him by the detectives at his home about the ownership of the hat constituted a custodial interrogation as defined in *Miranda v. Arizona,* 384 U. S. 436, and adopted in *Myers v. State,* 3 Md. App. 534, 240 A. 2d 288, since the three detectives who went to his home had reason to regard him as a prime suspect.

We cannot agree. Prior to arrival at appellant's home the detectives had stopped at three or four other homes where they had sought information as to the ownership

of the hat. On arrival at appellant's home he was shown the hat and asked if he owned one like it. He denied ownership and denied knowledge as to whom it belonged. It was only after the hat was shown to his mother and she stated that she thought it was the one he had been wearing for the past couple of days that suspicion focused upon appellant and he was taken into custody. We find that the questioning of appellant at his home did not constitute a custodial interrogation within the ambit of *Miranda, supra,* and adopted in *Myers, supra,* but rather that the questions asked him about the hat was during a routine investigation to determine its ownership and, at best, was only an accosting and not an arrest. *Morgan v. State,* 2 Md. App. 440, 234 A. 2d 762.

Prior to the admission of appellant's confession into evidence, the trial court held a full evidentiary hearing out of the presence of the jury. The trial judge found that the questioning of appellant at his home did not constitute a custodial interrogation; that all of the rights and warnings required under *Miranda* were fully given; that appellant understood his rights and intelligently waived them; and that appellant's confession was made fully and voluntarily without duress or force.

In cases arising after the Supreme Court's decision in *Miranda v. Arizona, supra,* where the State seeks to admit into evidence a statement taken from the accused during a custodial interrogation, it must, as part of its proof of voluntariness, affirmatively show that all warnings required to be given an accused were so given, and that the accused understood his rights and knowingly and intelligently waived them, and it must be shown from the totality of the circumstances that the statement was voluntary. The question of whether a confession should be admitted in evidence is ordinarily a matter for the trial court to decide and its determination will not be disturbed on appeal unless there is a clear abuse of discretion. *Robinson v. State,* 3 Md. App. 666, 671, 240 A. 2d 638. *Wiggins v. State,* 4 Md. App. 95, 241 A. 2d 424;

*Barnhart v. State,* 5 Md. App. 222, 225-26, 246 A. 2d 280.

We find no abuse of discretion on the part of the trial court in admitting appellant's confession in evidence. The State proved that it was voluntary and affirmatively showed that all warnings required to be given prior to interrogation were so given and that appellant in giving the statement understood his rights and intelligently waived them.

## II

Appellant complains that he was prejudiced in that an F.B.I. agent who testified for the State was not previously identified to the defense by name. Prior to trial, the appellant moved for discovery under Maryland Rule 728, which included a request under 728 a. 3. that the State furnish a list of names of the witnesses it intended to call. The State answered, giving the names of such witnesses, but as to Agent Neill did not reveal his name and merely stated that it intended to call "two agents from the Federal Bureau of Investigation, Washington, D. C."

It is clear that the main objectives of Rule 728 are to assist the defendant in preparing his defense and to protect him from surprise. *Jones v. State,* 5 Md. App. 180, 245 A. 2d 897. Appellant has not shown that he was surprised by the calling of the agent nor did he request a continuance. The State revealed the entire contents of the report from which Agent Neill testified to the defense so that, in fact, the only information unknown to the defense was the agent's name. In addition, Rule 728 provides no sanctions for non-compliance and thus the mere failure to disclose the agent's name does not preclude his testimony. *Clark and Richardson v. State,* 6 Md. App. 91, 250 A. 2d 317.

## III

Appellant next contends he was denied the right of allocution before sentencing. Maryland Rules of Procedure, Rule 761 (a) in pertinent part provides: "Before

imposing sentence the court shall afford an accused or his counsel an opportunity to make a statement and to present information in mitigation of punishment." As counsel for appellant on appeal concedes, such a right was afforded to appellant at trial. Appellant's trial counsel did make an elaborate statement urging mitigation of punishment. After the statement was made, appellant was asked, "Now, Mr. Jackson, are you ready to be sentenced?" To this question the appellant responded affirmatively. There is no merit to the contention.

## IV

Although not raised in his brief, on oral argument before this Court appellant urged that his rights were violated when immediately after being taken into custody by the police he was not taken before a committing magistrate in violation of Md. Code, Art. 52, Sec. 97 (h), which provides:

> "(h) *Montgomery County.*—In Montgomery County, the County Council for said county shall appoint, with the advice and consent of the chief judge of the People's Court for Montgomery County, no more than thirty (30) employees of the People's Court for Montgomery County who shall be designated as committing magistrates in said county and who shall have all the powers and jurisdiction now or hereafter prescribed by law in justices of the peace or committing magistrates. Each committing magistrate, so appointed and designated, shall serve a term of two (2) years or until his successor is appointed and qualified, and receive an annual salary as set by the County Council. The committing magistrates shall sit at such times and places and shall perform such duties as are assigned to them by the judges of the People's Court. In the conduct and administration of their affairs they shall conform to such prac-

tices and procedures, consistent with law, as are prescribed by the judges of the People's Court with the approval of the judges thereof. The judges shall prescribe such practice and procedure as is necessary apart from the other duties of the committing magistrates to assure that one such magistrate is always on duty and available for immediate presentment of any arrested person, that such magistrate be required to advise the arrested person of his constitutional rights including the right to be assigned, retain, or waive the assistance of counsel as the case may require, that such magistrate be required to set bond, determine probable cause, assign counsel where necessary, and perform other functions now performed by the justices of the peace of said county. *The County Council shall require that each arrested person be taken before such committing magistrate immediately following arrest without delay and shall provide that all proceedings concerning such arrested persons before the magistrate be recorded upon a mechanical device and preserved until the criminal proceeding concerning such arrested person is finally concluded."* (emphasis ours)

Appellant particularly urges that the last sentence of Sec. 97 (h) requires the County Council to impose upon the police department a rule similar to that imposed upon federal officers under Rule 5 (a) F.R.Cr.P. by *Mallory v. United States,* 354 U. S. 449.

Appellant was taken into custody by the Montgomery County police at 7:30 a.m. on May 31, 1967. His confession was made at 10:30 a.m. the same day. Immediately subsequent to the confession, and still on May 31, 1967, an arrest warrant was obtained and he was taken before a committing magistrate. Chapter 299, Laws of the State of Maryland, 1967, which provided for what is now

subsection (h) of Art. 52, Sec. 97, provides that the subsection is to become effective June 1, 1967. Thus it is clear that Art. 52, Sec. 97 (h) could not apply to appellant.[1]

Moreover, we have held that the rule enunciated in *Mallory, supra,* is a federal rule which applies only to federal prosecutions and has no application to prosecutions in State courts as of this date. *Hartley v. State,* 4 Md. App. 450, 243 A. 2d 665; *Falcon v. State,* 4 Md. App. 467, 243 A. 2d 631. See also *Culombe v. Connecticut,* 367 U. S. 568.

Article 52, Sec. 97 (h) fails to provide any sanctions to be applied in the event the police do not comply with the statute.[2] We therefore do not construe the intent of the legislature in enacting Section 97 (h) to embrace the sanctions applied by the Supreme Court. Thus, even had appellant's arrest taken place after June 1, 1967, the confession would not be inadmissible merely because of the failure of the police to bring appellant before a committing magistrate immediately following his arrest.

*Judgments affirmed.*

---

1. See Sec. 428 of the Charter and Public Local Laws of Baltimore City which has a similar provision but does not contain the explicit requirement of bringing the arrested person "immediately" before the Justice of the Peace who issued the writ or warrant of arrest.

2. The County Council appointed the committing magistrates and provided in the budget for their salaries and for the purchase of mechanical recording devices but passed no ordinance for the enforcement of the statute.