# JAMES McCLAIN *v.* STATE OF MARYLAND

[No. 94, September Term, 1979.]

*Decided September 9, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Patricia A. Logan, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 471 *infra.*

We are presented with two questions in this case: (1) Whether appellant James McClain preserved for appellate review the issue of whether statements obtained from him in violation of Maryland District Rule 709 a were not admissible in evidence, as we ultimately held in *Johnson v. State*, 282 Md. 314, 384 A.2d 709 (1978), and if so (2) whether *Johnson* is applicable to a case tried before our decision there but reached for appellate review after that decision. We answer both questions in the affirmative. Hence, we shall reverse the unreported decision of the Court of Special Appeals in *McClain v. State*, No. 867, September Term, 1978.

For purposes of our decision here it is not necessary to go into all of the lurid details of the alleged crime. Suffice it to say that McClain was convicted of murder in the first degree by a Baltimore City jury. The victim was a ten-month old baby allegedly thrown down the trash chute of a high-rise residential building. He was arrested at 2:43 P.M. on September 11, 1976, and completed the giving of an inculpatory statement at 2:55 P.M. on September 12.

Former Maryland District Rule 709 a read:

A defendant shall be taken before a conveniently available judicial officer without unnecessary delay and in no event later than the earlier of (1) twenty-four hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant, or, where an arrest has been made without a warrant, the first session of court after the charging of the defendant. Such charging shall take place promptly after arrest.

It was this rule which was applicable to McClain's case.[1]

---

1. On January 31, 1977, effective July 1, 1977, we adopted extensive revisions in the rules applicable to criminal cases, Chapter 700 (Criminal Causes) of the Maryland Rules of Procedure and Chapter 700 (Criminal Causes) of the Maryland District Rules. A rule somewhat similar to M.D.R.

In *Johnson* Judge Levine said for the Court:

> In our opinion the protection of the right of an accused to prompt production before a judicial officer following arrest will be most effectively accomplished by a per se exclusionary rule. Not only is such a rule calculated to deter unlawful detentions and to preserve the integrity of the criminal justice system, but it is likely to assure more certain and even-handed application of the prompt presentment requirement and will provide to trial courts, the bar and law enforcement officials greater guidance as to the permissible limits of custodial interrogation prior to an initial appearance. *Commonwealth v. Davenport,* [471 Pa. 278,] 370 A.2d [301,] 306 [(1977)]. [*Id.* at 328.]

\* \* \*

> We therefore hold that any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer, thereby violating M.D.R. 723 a, is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief. A statement is automatically excludible if, at the time it was obtained from the defendant, he had not been produced before a commissioner for his initial appearance within the earlier of 24 hours after arrest or the first session of court following arrest, irrespective of the reason for the delay. [*Id.* at 328-29.]

---

709 a was adopted as M.D.R. 723 a. Since our decision in *Johnson* M.D.R. 723 a has been amended so that it now reads:

A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than 24 hours after arrest. A charging document shall be filed promptly after arrest if not already filed.

The State concedes that there was not compliance with M.D.R. 709 a. It contends, however, that the objection to the admissibility of the statement was not based upon a ground similar to that before the Court in *Johnson.* Hence, it claims the point is waived. It further contends that in any event the rule enunciated in *Johnson* should be applicable only to cases tried subsequent to April 6, 1978, the date of our decision in *Johnson.*

## I

McClain's attorney said in his argument on the motion to suppress the statements:

> In this case the defendant was not given the opportunity to obtain counsel, either court appointed or privately retained or by virtue of the fact that the officer held the defendant without charging the defendant and the defendant did not have an opportunity to be taken before the Commissioner. If charged immediately, he should have been taken before the Commissioner for the purpose of normally advising him of his rights and then the Commissioner would be able to make a determination that the defendant either should have or should not have counsel at that time, depending on the results as to what the Commissioner decided. The defendant did not have this opportunity. The defendant was arrested and after he refused to give a statement and saying he had no knowledge of what happened, he was held overnight and was not given the opportunity to go before the Commissioner or not given the opportunity to have private counsel, obviously the defendant couldn't have private counsel, he has a public defender representing him at trial.... I think at that point the officer's obligation was either to charge the defendant or to release the defendant and not start all over again the following day and

try to pry or force to bring on him psychologically to do away with his will to resist. It is conceivable that the officer, by going back the next day and asking him again and asking him the questions on the explanation of rights, that he was trying to get the defendant to tell him what he wanted him to tell him. From the facts in this case, the defendant should have been taken before the Commissioner on the eleventh of September and he should have had the opportunity to avail himself of either private attorney or a court appointed attorney. . . .

. . . I say as an alternative they should have released him, he was not either charged or released, but was held incommunicado by the police without being in any kind of official status in the system. He was held in limbo, if you will; he had no way of getting an attorney to get him before a judge. If he had private counsel to get him before a court, what private counsel would have done was to file a habeas corpus and try to interpose himself. The fact is that the defendant was not charged. I respectfully suggest that the Statement made by the Defendant should be ruled inadmissible in evidence. . . .

The Court of Special Appeals said:

The record discloses that at the suppression hearing and at the trial on the merits of the case, appellant's objection to the admissibility of the inculpatory statement was based on the fact that the statement was not voluntary in the traditional sense. Although appellant, on the motion to suppress argued, among other things, about the delay in charging and presenting him before a judicial officer, this argument was in the context of the voluntariness of the statement rather than the *per se* exclusionary rule which was never mentioned. Because appellant stated the specific ground for his objection to the admissibility of the statement, both at the hearing on the motion to suppress and at the

trial on the merits of the case, he is bound by the ground stated and is deemed to have waived other grounds not mentioned. *Von Lusch v. State,* 279 Md. 255, 262-63 [, 368 A.2d 468] (1977).

Accordingly, we conclude that the issue of the State's violation of Maryland [District] Rule 723a is not properly before this court.

We disagree. The argument was directed at voluntariness but it included that a statement was obtained while McClain was held in violation of M.D.R. 709 a. It may well be, as suggested from the bench at argument in this case by one of the judges in the majority in *Johnson,* that bench and bar prior to our decision in *Johnson* had been of the view that the fact an individual was held in violation of the rule was simply one of the factors to be taken into consideration in weighing the voluntariness of the statement. It certainly was not incumbent upon trial counsel to object on the ground that on April 6, 1978, we would decide *Johnson* as it was decided. We hold that the issue was raised.

## II

We discussed the matter of retroactivity of court decisions in *Wiggins v. State,* 275 Md. 689, 701-07, 344 A.2d 80 (1975), and most recently in *State v. Hicks,* 285 Md. 310, 336-38, 403 A.2d 356 (1979). As we pointed out in *Wiggins,* the genesis of the modern retroactivity doctrine in criminal litigation is *Linkletter v. Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), in which Mr. Justice Clark said for the Court:

[T]he accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective. [*Id.* at 628.]

\* \* \*

[T]he Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said [in *Great N. Ry. v. Sunburst Co.,* 287 U.S. 358, 364, 53 S. Ct. 145, 77 L. Ed. 360 (1932)], "We think the

federal constitution has no voice upon the subject."
[*Id.* at 629.]

As we noted in *Hicks* the Supreme Court has mandated the retroactive application of cases:

> [W]here the rule involved affects the integrity of the fact-finding process, or where it is a non-procedural rule that would render a trial constitutionally impermissible (*e.g.,* a new double jeopardy ruling), or where it renders a certain type of punishment impermissible . . . . [*Id.* 285 Md. at 336.]

We went on to say in *Hicks:*

> Where retroactivity is not mandated under the above criteria, a balancing test involving three prongs is employed to determine whether the new ruling should be applied prospectively only. Those three considerations are: (1) the purpose of the new ruling; (2) the reliance placed upon the old ruling; and (3) the effect on the administration of justice of a retrospective application of the new ruling. *Stovall v. Denno,* 388 U.S. 293, 296-297, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Linkletter v. Walker,* 381 U.S. 618, 636, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965); *Wiggins v. State, supra,* 275 Md. at 700-701, 718, 737-741. [*Id.* at 337.]

This case is unlike many cases in which a retroactive application of a new rule has been sought in that it is not a collateral attack on a prior judgment nor is it one on direct review where the point was not raised in the trial court and it is sought to be raised on appellate review. Here, as we have already held, the point was raised below and McClain simply seeks to have applied in his case the same rule which was applied in Johnson's case.

The courts and the scholars have been involved in a battle of semantics where retroactivity and prospectivity of appellate decisions are concerned. In fact, the decision in

*Johnson* amounts to a retroactive application of a new rule because it makes applicable to his case a rule of law relative to admission of statements which had not been enunciated at the time of trial. We regard the point before us as not being so much the issue of retroactivity as it is the question of what law is applicable on direct appellate review of a conviction.

In *Linkletter* Mr. Justice Clark cited for the Court *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L. Ed. 49 (1801), for the proposition "that a change in law will be given effect while a case is on direct review . . . ." 381 U.S. at 627. In *Schooner Peggy* Chief Justice Marshall concluded the opinion by saying for the Court, "[T]he court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside." *Id.* 5 U.S. at 110. *Schooner Peggy* has been cited and followed many times by this Court in various contexts. *See, e.g., Bell v. State,* 236 Md. 356, 363, 204 A.2d 54 (1964); *Montague v. State,* 54 Md. 481, 483 (1880); *Wade v. St. Mary's Indust. School,* 43 Md. 178, 181 (1875); *Price v. Nesbitt,* 29 Md. 263, 266 (1868); *Day v. Day,* 22 Md. 530, 539 (1865); *Keller v. State,* 12 Md. 322, 327 (1858); and *State v. Norwood,* 12 Md. 195, 206 (1858). To similar effect among our older cases, but not citing *Schooner Peggy,* are the separate opinion of Chief Judge Alvey in *Hess v. Muir,* 65 Md. 586, 605, 5 A. 540, 6 A. 673 (1886); *Smith v. State,* 45 Md. 49 (1876); *Atwell v. Grant,* 11 Md. 101, 104 (1857); and *State v. Baltimore & O.R.R.,* 12 G. & J. 399, 437 (1842). More recent cases to similar effect include *Aviles v. Eshelman Elec. Corp.,* 281 Md. 529, 533, 379 A.2d 1227 (1977); *Co. Council v. Carl M. Freeman Assoc.,* 281 Md. 70, 76, 376 A.2d 860 (1977); *Hays and Wainwright v. State,* 240 Md. 482, 485-86, 214 A.2d 573 (1965); *Yorkdale v. Powell,* 237 Md. 121, 124, 205 A.2d 269 (1964); *Woman's Club v. State Tax Comm.,* 195 Md. 16, 19, 72 A.2d 742 (1950); *Tudor Arms Apts. v. Shaffer,* 191 Md. 342, 351, 62 A.2d 346 (1948); and *Cockerham v. Children's Society,* 185 Md. 97, 102, 43 A.2d 197 (1945).

Although this Court has followed the *Linkletter* formula

in a number of cases, this formula in no case has led us to refuse to apply a new rule to a case on direct review pending at the time of the formulation of the new rule in which the issue of the new rule was raised.

In *Schiller v. Lefkowitz,* 242 Md. 461, 219 A.2d 378 (1966), the Court was faced with the question of whether its decision in *Schowgurow v. State,* 240 Md. 121, 213 A.2d 475 (1965), holding that a jury composed of persons who were required to swear to their belief in God as a condition of service was not properly constituted should be retrospectively applied in a civil case where the point had not been raised. The ruling was not made retroactive in its application. In the process of that opinion Judge Oppenheimer said for the Court, "A change in law will generally be given effect while a case is on direct review whether the litigation is criminal or civil. *See Linkletter,* 381 U.S. at 627 and cases therein cited." *Id.* at 469-70. We have already quoted that statement from *Linkletter* with its citation to *Schooner Peggy.* The courts and commentators were of the view that what the Supreme Court had done was to hold that a new rule must be applied to all those cases which were still subject to direct review by the Supreme Court at the time the new rule was handed down. *See, e.g.,* the dissent of Mr. Justice Harlan in *Desist v. United States,* 394 U.S. 244, 258, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969), and Haddad, *"Retroactivity Should be Rethought": A Call for the End of the Linkletter Doctrine,* 60 J. Crim. L.C. & P.S. 417, 431 (1969).

However, in *Desist* the Court declined to apply its holding in *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), to a case where the point had been raised in the trial court and the United States Court of Appeals prior to the Supreme Court's decision in *Katz. Katz* held that the reach of the Fourth Amendment could not turn upon the presence or absence of a physical intrusion into any given enclosure. In *Desist* the Court said, "The petitioners argue that even if *Katz* is not given fully retrospective effect, at least it should govern those cases which, like the petitioners', were pending on direct review when *Katz* was decided." *Id.* at 252. Mr. Justice Douglas was prompted to

dissent saying the decision not to apply *Katz* in *Desist* "d[id] not seem to [him] to be the administration of justice with an even hand." *Id.* at 255. He added:

> It still remains a mystery how some convicted people are given new trials for unconstitutional convictions and others are kept in jail without any hope of relief though their complaints are equally meritorious. At least the Court should not say as respects *Katz* that it is given "wholly prospective application," when it was made retroactive in his case. [*Id.* at 255-56.]

In that same case Mr. Justice Harlan said in his dissent:

> The unsound character of the rule reaffirmed today is perhaps best exposed by considering the following hypothetical. Imagine that the Second Circuit in the present case had anticipated the line of reasoning this Court subsequently pursued in *Katz v. United States, supra,* at 352-353, concluding — as this Court there did — that "the underpinnings of *Olmstead* [*v. United States,* 277 U.S. 438, 48 S. Ct. 564, 72 L. Ed. 944 (1928),] and *Goldman* [*v. United States,* 316 U.S. 129, 62 S. Ct. 993, 86 L. Ed. 1322 (1942),] have been so eroded by our subsequent decisions that the 'trespass' doctrine there enunciated can no longer be regarded as controlling." *Id.,* at 353. Would we have *reversed* the case on the ground that the principles the Second Circuit had announced — though identical with those in *Katz* — should not control because *Katz* is not retroactive? To the contrary, I venture to say that we would have taken satisfaction that the lower court had reached the same conclusion we subsequently did in *Katz.* If a "new" constitutional doctrine is truly right, we should not reverse lower courts which have accepted it; nor should we affirm those which have rejected the very arguments we have embraced. Anything else would belie the truism that it is the task of this Court, like that of

any other, to do justice to each litigant on the merits of his own case. It is only if our decisions can be justified in terms of this fundamental premise that they may properly be considered the legitimate products of a court of law, rather than the commands of a super-legislature. [*Id.* at 259 (emphasis in original).]

Mr. Justice Harlan was convinced that a new rule in its application should be considered differently for purposes of direct review than for purposes of collateral attack or review. He expanded on his views in *Mackey v. United States,* 401 U.S. 667, 91 S. Ct. 1160, 28 L. Ed. 2d 404 (1971), stating in a concurring and dissenting opinion:

If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all. [*Id.* at 679.]

\* \* \*

I continue to believe that a proper perception of our duties as a court of law, charged with applying the Constitution to resolve every legal dispute within our jurisdiction on direct review, mandates that we apply the law as it is at the time, not as it once was. Inquiry into the nature, purposes, and scope of a particular constitutional rule is essential to the task of deciding whether that rule should be made the law of the land. That inquiry is, however, quite simply irrelevant in deciding, once a rule has been adopted as part of our legal fabric, which cases then pending in this Court should be governed by it. [*Id.* at 681.]

\* \* \*

In conclusion, the Court in deciding these cases seems largely to have forgotten the limitations that

accompany its functions as a court of law. For the retroactivity doctrine announced today bespeaks more considerations of policy than of legal principle. Treating direct and collateral review as if they were of one piece seems to me faulty analysis, ignoring, as it does, the jurisprudential considerations that differentiate the two kinds of adjudicatory functions. As a court of law we have no right on direct review to treat one case differently from another with respect to constitutional provisions applicable to both. As regards cases coming here on collateral review, the problem of retroactivity is in truth none other than one of resettling the limits of the reach of the Great Writ, which under the recent decisions of this Court has been given almost boundless sweep. [*Id.* at 701-02.]

Mr. Justice Marshall in his opinion concurring in part and dissenting in part in *Williams v. United States,* 401 U.S. 646, 665, 91 S. Ct. 1148, 28 L. Ed. 2d 388 (1971), said that he had "stud[ied] afresh the pattern of the Court's retroactivity decisions since *Linkletter v. Walker,* 381 U.S. 618 (1965)," and then said:

Sound jurisprudential reasoning, so well articulated by Mr. Justice Harlan in his separate opinion covering the present cases, *post,* p. 675, in my view requires that cases still on direct review should receive full benefit of our supervening constitutional decisions. [*Id.* at 665.]

Mr. Justice Marshall again expressed such views in his concurring opinion in *Hankerson v. North Carolina,* 432 U.S. 233, 245, 97 S. Ct. 2339, 53 L. Ed. 2d 306 (1977). In that same case Mr. Justice Powell concurred in the judgment holding that *Mullaney v. Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), should be retroactively applied but opined that "[t]he retroactivity doctrine that has emerged [from *Linkletter* and its progeny] is far from satisfactory." *Id.* at 246. He went on to say that he was "now persuaded that it would be wiser to adopt the view urged by

Mr. Justice Harlan in *Mackey v. United States,* 401 U.S. 667, 675, 702 (1971) (separate opinion)," adding:

> When the Court declines to hold a new constitutional rule retroactive, one chance beneficiary — the lucky individual whose case was chosen as the occasion for announcing the new principle — enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine. This hardly comports with the ideal of "administration of justice with an even hand." *Desist v. United States, supra,* at 255 (Douglas, J., dissenting). [*Id.* at 247.]

This summer in *Brown v. Louisiana,* U.S., 100 S. Ct. 2214, 65 L. Ed. 2d 159 (1980), Mr. Justice Powell concurred in the judgment, saying:

> This Court announced its decision in *Burch v. Louisiana,* 441 U.S. 130 (1979), while the petitioner's objection to the nonunanimous verdict was pending on direct appeal. *Ante,* at 2218 (slip op., at 3). Since I believe that new constitutional rules should apply retroactively "in cases still pending on direct review," *Hankerson v. North Carolina,* 432 U.S. 233, 248 (Powell, J., concurring in the judgment), I concur in the judgment reversing the petitioner's conviction. [*Id.* at 100 S. Ct. 224.]

He was joined by Mr. Justice Stevens.

A view similar to that of these justices is expressed in Bender, *The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio,* 110 U. Pa. L. Rev. 650, 675 (1962), where he says, "There ought to be a less capricious way to treat relevantly identical litigants." For similar views see Haddad, *op. cit.* at 438; Mishkin, *The Supreme Court 1964 Term — Foreword: The High Court, The Great Writ, and the Due Process of Time and Law,* 79 Harv. L. Rev. 56, 61 n. 23 (1965); and Schwartz, *Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin,* 33 U. Chi. L. Rev. 719, 764 (1966). A less

capricious way was found by the courts when they made decisions applicable upon direct review in *Lopez v. Bowen,* 495 P.2d 64, 66 (Alaska 1972); *Fresneda v. State,* 458 P.2d 134, 143 n. 28 (Alaska 1969); *Brumley v. Commonwealth,* 375 S.W.2d 270 (Ky. 1964); *New Jersey v. Smith,* 37 N.J. 481, 181 A.2d 761 (1962); and *People v. Loria,* 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478 (1961). Cases on the subject are analyzed and discussed in Annot., 10 A.L.R.3d 1371 (1966), and Annot., 22 L. Ed. 2d 821 (1969).

We have no constitutional question in this case. However, we believe that the legal principles enunciated by Justices Douglas, Harlan, Marshall, Powell, and Stevens more nearly conform with fairness and traditional Maryland holdings than would a determination that *Johnson* is not applicable to this case. As Mr. Justice Cardozo said for the Court in *Great N. Ry. v. Sunburst Co.,* 287 U.S. 358, 365, 53 S. Ct. 145, 77 L. Ed. 360 (1932), "The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. . . . In making this choice, she is declaring common law for those within her borders." In our view it would be unjust and unfair to hold that Johnson, who raised an issue, is to have the benefit of the holding in his case, but McClain, who raised the same issue, is not to have the benefit of that holding. It makes fish of one and fowl of the other. It simply does not comport with the American tradition of equal justice under the law. We hold that *Johnson* is applicable to McClain's case.

Our holding here is not to be interpreted as being applicable to any case other than one arising under similar facts and circumstances.

> *Judgment reversed; case remanded to the Court of Special Appeals for passage of an order reversing the judgment of the Criminal Court of Baltimore and further remanding the case for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*

*Murphy, C. J., dissenting:*

The majority compounds the error committed by a divided (4-3) Court in *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), by applying its exclusionary rule to all criminal convictions not final on the date that that case was decided (April 6, 1978) where the issue was preserved for appellate review by timely objection made at the trial. The underlying rationale for the majority's retroactive application of *Johnson* is found in the concluding paragraph of the opinion, *i.e.,* "In our view it would be unjust and unfair to hold that Johnson, who raised an issue, is to have the benefit of the holding in his case, but McClain, who raised the same issue, is not to have the benefit of that holding. It makes fish of one and fowl of the other. It simply does not comport with the American tradition of equal justice under the law. We hold that *Johnson* is applicable to McClain's case." To support its holding, the majority relies primarily upon the retroactivity formulation announced in *Linkletter v. Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965); the change of law doctrine enunciated in *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L. Ed. 49 (1801), and applied in numerous Maryland cases, and dissenting opinions of various Supreme Court Justices in cases involving the retroactive application of new constitutional decisions. Because I think the majority's view of the controlling principles of law is in error, and is contrary to our most recent decision on the subject, *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), I respectfully dissent and give my reasons, together with those background facts which I deem essential to a full understanding of the case.

Phil Thomas, a ten-month-old baby, was murdered on September 11, 1976. The baby had been thrown down the trash chute of a high-rise residential building. The appellant McClain confessed to the crime the following day. He was thereafter charged with first-degree murder and on November 8, 1977, he was found guilty of the offense by a jury in the Criminal Court of Baltimore. He was sentenced to life imprisonment.

On appeal to the Court of Special Appeals, McClain maintained that his confession was improperly admitted in evidence because, among other reasons, it was obtained in violation of Maryland District Rule (M.D.R.) 723 a, which requires that an arrested person

> "shall be taken before a judicial officer without unnecessary delay and in no event later than the earlier of (1) 24 hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant or, where an arrest has been made without a warrant, the first session of court after the charging document is filed. . . ."

The Court of Special Appeals held that McClain had not been brought before a judicial officer in accordance with the requirements of M.D.R. 723 a and that his confession, obtained more than twenty-four hours after his arrest, was taken in violation of the dictates of the rule. The court noted that under *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), a confession, voluntary or otherwise, obtained in violation of the rule is inadmissible in evidence upon proper objection being made. It said that while McClain had argued during the course of the suppression hearing "about the delay in charging and presenting him before a judicial officer," the argument was advanced "in the context of the voluntariness of the statement rather than the per se exclusionary rule" announced in *Johnson.* Consequently, the court held that the question of the confession's admissibility under M.D.R. 723 a was neither raised nor decided in the lower court and hence was not preserved for appellate review.

We granted certiorari primarily to consider whether the exclusionary rule articulated in *Johnson* — a case decided five months after McClain's trial — was applicable in determining whether McClain's confession was inadmissible under M.D.R. 723 a. The majority has concluded — and I agree — that this question is properly before us because, contrary to the conclusion reached by the Court of Special

Appeals, McClain did object to the confession's admissibility on the ground that it was obtained in violation of his right under M.D.R. 723 a to be taken before a judicial officer without unnecessary delay.

(1)

The record discloses that McClain was taken to police headquarters on the morning of September 11 for the purpose of questioning him about the baby's death. At 2:43 p.m. that day he was formally arrested and *Miranda* warnings were read to him. McClain stated that he had no knowledge of the crime and did not want to talk about it, although he agreed to submit to a polygraph examination the next day. He was held overnight in the police lockup without being taken before a judicial officer. McClain underwent a polygraph examination on September 12, after which at 12:45 p.m., he gave the polygraph examiner a written statement admitting complicity in the crime. At 1:25 p.m., McClain again admitted his guilt, this time to Detective Shirey, who reduced his statement to writing, which McClain signed. A more detailed written statement was thereafter obtained from McClain in which he admitted throwing the baby down the trash chute; that statement was concluded at 2:55 p.m. on September 12. Thereafter, McClain was taken before a judicial officer, as required by the rule.

(2)

The Court held in *Johnson* that the provisions of M.D.R. 723 a were mandatory and that a confession, even though voluntary, was inadmissible in evidence upon objection if it was obtained in violation of the requirements of the rule. The Court said that long before the rule was adopted, Maryland law placed police officers under a common law duty to take an arrested person before a magistrate without unnecessary delay. The Court observed that the doctrine "portended the enactment of legislation guaranteeing

detainees the right to prompt presentment in Baltimore City and Montgomery County."[1] *Id.* at 319. It noted that in July of 1971, the Court adopted a rule of statewide application, designated as M.D.R. 709, which secured the right to prompt production of an arrestee before a judicial officer. M.D.R. 709 became M.D.R. 723 a without material change when, on July 1, 1977, the criminal rules were comprehensively revised.

In holding that M.D.R. 723 a was mandatory, and not merely a directory guideline as suggested by the State, the Court said in *Johnson* that the word "shall," as used in the rule, denoted an imperative obligation on the part of the police to promptly present an arrestee before a judicial officer, and that this obligation was inconsistent with the exercise of discretion. The Court said that the prompt presentment requirement of the rule was designed "to insure that an accused will be promptly afforded the full panoply of safeguards provided at the initial appearance." *Id.* at 321. The Court then proceeded to determine the effect of a violation of M.D.R. 723 a on the admissibility of a confession obtained during a period of unnecessary delay. It observed that in federal trials the Supreme Court had adopted a per se exclusionary rule for confessions, voluntary or otherwise, which were obtained during a period of unnecessary delay in producing an arrestee before a judicial officer in contravention of Federal Criminal Rule 5 (a). The Court recognized in *Johnson* that this federally-fashioned exclusionary rule, which derived from *Mallory v. United States,* 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957); *Upshaw v. United States,* 335 U.S. 410, 69 S. Ct. 170, 93 L. Ed. 100 (1948); and *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943), was not of constitutional dimension, but rather was a product of the exercise of the Supreme Court's supervisory authority over the administration of criminal justice in the federal courts. The exclusionary rule was not, therefore, binding on the states,

---

1. We referred to Maryland Code (1957, 1968 Repl. Vol., 1971 Cum. Supp.) Art. 52, § 97(h) (Montgomery County) and Code (1957, 1966 Repl. Vol.) Art. 26, § 115 (Baltimore City). These statutes were repealed in 1972.

as the Supreme Court held in *Culombe v. Connecticut,* 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). As the Court recognized in *Johnson,* the vast majority of state courts had refused to adopt the *Mallory-Upshaw-McNabb* exclusionary rule, "opting instead for a traditional due process voluntariness test of the admissibility of confessions" with the delay in presentment being but one relevant factor in evaluating the overall voluntariness of the confession. *Id.* at 324. Concluding that "the voluntariness standard is a hopelessly inadequate means of safeguarding a defendant's right of prompt presentment," *id.* at 325, *Johnson* declined to follow the majority view. Embracing the *Mallory-Upshaw-McNabb* doctrine, the Court held that any statement obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer, thereby violating M.D.R. 723 a, was subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief. *Id.* at 329.

In so deciding *Johnson,* the Court departed from our earlier cases which had expressly considered, but declined to adopt, the *Mallory-Upshaw-McNabb* formulation. In *Cox v. State,* 192 Md. 525, 64 A.2d 732 (1949), public local laws applicable in Baltimore City [2] required the police immediately to take an arrested person before the nearest judicial officer if the arrest was made in the daytime. No sanction was provided in the statute for failure of compliance. Cox was held over two days in police custody without being taken before a judicial officer, during which time he confessed to the crime. After considering *McNabb* and *Upshaw,* our predecessors held that the confession was not per se inadmissible because of the statutory violation. *Cox* was followed in later cases. *See, e.g., White v. State,* 201 Md. 489, 94 A.2d 447 (1953); *Grear v. State,* 194 Md. 335, 71 A.2d 24 (1950); *James v. State,* 193 Md. 31, 65 A.2d 888 (1949). In *Prescoe v. State,* 231 Md. 486, 191 A.2d 226 (1963), the Court, after referring to *McNabb, Upshaw* and *Mallory,* observed:

---

**2.** *See* §§ 742 and 916 of Art. 4 of the Charter and Public Local Laws of Baltimore City (1938).

"[T]he fact that a confession is procured while the accused is illegally held in custody, because of failure to produce him before a magistrate or a judge for a preliminary hearing, has not been held sufficient in and of itself to render the confession involuntary and thus inadmissible, although this fact may be one of the circumstances considered when determining voluntariness." 231 Md. at 491.

*Taylor v. State,* 238 Md. 424, 209 A.2d 595 (1965), involved Code, Art. 26, § 115, applicable in Baltimore City, which provided that it was the duty of a police officer to take an arrested person before a judge of the Municipal Court. We found no requirement in the statute that the arrestee be "immediately" presented before the court. We observed:

"No time limit is set in the Section as to when it is compulsory that an arrested person be taken before one of the judges; and no mention is made to the effect that a failure to take such a person before one of the judges by a specified time shall render a voluntary confession inadmissible. Had the Legislature so intended, it would have been a very simple task to manifest such intention. We hold that the failure to take the appellant before a judge of the Municipal Court prior to his confessions did not render them inadmissible." 238 Md. at 432.

That Maryland did not follow the exclusionary rule of *McNabb, Upshaw* and *Mallory* was recognized in *Blackburn v. Copinger,* 300 F. Supp. 1127 (D. Md. 1969), *aff'd per curiam,* 421 F.2d 602 (4th Cir.). The Court of Special Appeals also noted our earlier rejection of the federal exclusionary rule. It held that a statute, applicable in Montgomery County, requiring immediate presentment of an arrestee before a judicial officer, and which contained no sanction for its violation, did not render per se inadmissible a confession taken in violation of its provisions. *Murphy v. State,* 8 Md. App. 430, 260 A.2d 357 (1970); *Jackson v. State,* 8 Md. App. 260, 259 A.2d 587 (1969). In its decision in *Johnson v. State,* 36 Md. App. 162, 373 A.2d 300 (1977), which our *Johnson*

reversed, the court extended the holding of the cases to M.D.R. 709.

Neither M.D.R. 709 nor M.D.R. 723 a contains any express sanction for its violation and it was not until we decided *Johnson* in 1978 that the exclusionary rule of *McNabb* and its progeny was adopted. In these circumstances, even though the provisions of the rule have been mandatory since the rule's adoption, *Johnson*'s exclusionary sanction should be afforded only prospective application to apply to statements taken after April 6, 1978, the date *Johnson* was decided.

In *Wiggins v. State,* 275 Md. 689, 344 A.2d 80 (1975), and most recently in *State v. Hicks,* 285 Md. 310, 336-38, 403 A.2d 356 (1979), we recited in great detail the principles governing the retroactive application of new rulings in criminal cases. Briefly restated, there is no constitutional rule which demands that decisions be either given complete prospective application or absolute retroactive effect in all circumstances. *Williams v. United States,* 401 U.S. 646, 91 S. Ct. 1148, 28 L. Ed. 2d 388 (1971); *Desist v. United States,* 394 U.S. 244, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969); *Tehan v. Shott,* 382 U.S. 406, 86 S. Ct. 459, 15 L. Ed. 2d 453 (1966); *Linkletter v. Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965). As we noted in *Hicks,* however, the Supreme Court has mandated the retroactive application of cases

"where the rule involved affects the integrity of the fact-finding process, or where it is a non-procedural rule that would render a trial constitutionally impermissible (*e.g.,* a new double jeopardy ruling), or where it renders a certain type of punishment impermissible." 285 Md. at 336.

None of these three criteria are applicable to the *Johnson* decision.

First, the fact that an arrestee is not brought promptly before a judicial officer does not affect the integrity of the truth-finding function of the criminal courts. The purpose of M.D.R. 723 a, as we have said, is to insure that an arrested

person will be promptly afforded the full panoply of safeguards provided at the initial appearance, which include a determination of whether probable cause exists to further detain the defendant, a finding of eligiblity for pretrial release, and a forum in which to inform the accused of his right to counsel. Triggered by compliance with M.D.R. 723 a these protections "bolster in substantial fashion . . . the due process right to be free from coercive investigatory methods." 282 Md. at 322. The prevention of coercive interrogatory methods is not, however, the main function of the rule. Moreover, these protections are not intended to assure the reliability of a statement made by the accused. Rather, they are measures by which the defendant's privilege against self-incrimination is protected. *Mallory v. United States, supra,* 354 U.S. at 452-53. *See Tehan v. Shott, supra.* As the Supreme Court stated in *Tehan, supra,* 382 U.S. at 416, "the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth." Furthermore, a defendant has a due process right — separate and distinct from his rights under M.D.R. 723 a — to exclude from trial any coerced or involuntary confession, without regard for its truth or falsity. *See Jackson v. Denno,* 378 U.S. 368, 376, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979); *State v. Kidd,* 281 Md. 32, 375 A.2d 1105 (1977). Thus, when this right is considered, any protection which M.D.R. 723 a provides to insure the inherent reliability of the fact-finding process does not of itself justify retrospective application of *Johnson. See Johnson v. New Jersey,* 384 U.S. 719, 730, 86 S. Ct. 1772, 16 L. Ed. 2d 882 (1966).

Second, as the Court pointed out in *Johnson, supra,* 282 Md. at 323, the exclusionary rule is not of constitutional dimension and, of course, it does not relate to the type of punishment to be imposed.

When retroactive application is not required by the criteria listed above, courts are empowered in appropriate cases to apply a new rule prospectively. *Johnson v. New Jersey, supra,* 384 U.S. at 726-27; *Linkletter v. Walker, supra,* 381 U.S. at 628. The Supreme Court has set out three

criteria by which to guide courts in this determination. The considerations are (1) the purpose to be served by the new ruling; (2) the reliance placed upon the old rule by law enforcement authorities; and (3) the effect which retroactive application would have on the administration of justice. *Michigan v. Payne,* 412 U.S. 47, 93 S. Ct. 1966, 36 L. Ed. 2d 736 (1973); *Desist v. United States, supra; Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *State v. Hicks, supra; Wiggins v. State, supra.*

Of these three criteria, the most important factor is the purpose to be served by the new rule. *Desist v. United States, supra,* 394 U.S. at 249. When a decision establishes an exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a statutory or constitutional right which does not affect the integrity of the fact-finding process, application of the new interpretation is usually limited to subsequent cases. *See United States v. Peltier,* 422 U.S. 531, 95 S. Ct. 2313, 45 L. Ed. 2d 374 (1975); *State v. Hicks, supra.* Like the exclusionary rule discussed in *Peltier* and our ruling in *State v. Hicks, supra,* the interpretation announced in *Johnson* is a prophylactic measure "calculated to deter unlawful detentions." 282 Md. at 328. It is intended to insure prompt presentment of an accused before a judicial officer, and thereby to preserve the integrity of the criminal justice system. This type of new ruling, as we said in *Hicks,* 285 Md. at 337, is almost invariably not given retroactive effect.

Because the purpose of the exclusionary rule adopted in *Johnson* clearly favors prospective application, little consideration need be given to the effect of reliance on the old rule or the burden on the administration of justice. *Michigan v. Payne, supra,* 412 U.S. at 55; *Desist v. United States, supra,* 394 U.S. at 251. In this case, however, both of these considerations support the prospective application of *Johnson.* Law enforcement officials undoubtedly relied on our past rulings holding that delay in presentment was merely one factor to consider in determining whether a statement was voluntary. Quite obviously, to apply *Johnson*'s exclusionary rule retroactively could impose a

substantial burden on the administration of justice. I conclude that both the deterrent purpose of the exclusionary rule and the reliance of the law enforcement officials demonstrate that the *Johnson* decision should only be applied to interrogations which occurred after the date of the *Johnson* decision. McClain's interrogation was conducted almost eighteen months prior to the Court's decision in *Johnson* and his confessions should not, therefore, be subject to the new exclusionary rule announced in that case.

It is true that the defendant in *Johnson* was afforded the benefit of the newly established exclusionary rule, while under the rule I espouse McClain will not. But in a number of Supreme Court cases decided after *Linkletter,* the Court departed from the *Linkletter* retroactivity formulation in favor of a rule which affords the benefit of a new constitutional ruling to the litigant who first raised the question while denying it to all others, including those whose convictions were pending on appeal or were otherwise not final at the time of the new decision. *See, e.g., Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882 (1966) (applying the principles of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prospectively only to cases involving trials commencing after the decisions in those cases were announced); *Desist v. United States;* 394 U.S. 244, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969) (applying the principles of *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), prospectively only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after the date of the *Katz* decision); *Williams v. United States,* 401 U.S. 646, 91 S. Ct. 1148, 28 L. Ed. 2d 388 (1971), and *Hill v. California,* 401 U.S. 797, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971) (applying prospectively only the principles of *Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), to searches occurring after the date of that opinion); *United States v. Peltier,* 422 U.S. 531, 95 S. Ct. 2313, 45 L. Ed. 2d 374 (1975) (applying prospectively only the rule of *Almeida-Sanchez v. United*

*States,* 413 U.S. 266, 93 S. Ct. 2535, 37 L. Ed. 2d 596 (1973), that a warrantless border search of an automobile without probable cause violated the fourth amendment). The Supreme Court said in *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), in referring to the *Wade* and *Gilbert* identification cases [3] in which the defendants were the only victims of illegal pretrial confrontations to receive the benefit of the rules established in their cases:

> "That they must be given that benefit is, however, an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum. Sound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, militate against denying Wade and Gilbert the benefit of today's decisions. Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decisionmaking." 388 U.S. at 301 (footnotes omitted).

### (3)

Unlike the majority, I see nothing unfair or unjust in the circumstances of this case in denying the benefits of the exclusionary rule of *Johnson* to cases like McClain's where the conviction was not final at the time *Johnson* was decided. We recognized in *Schiller v. Lefkowitz,* 242 Md. 461, 219 A.2d 378 (1966), that a decision changing preexisting law

---

**3.** United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967).

can be made wholly prospective without application even to the case in which the change is announced. As that case makes clear, however, a purely prospective overruling — not applicable to the decided case itself — "makes an opinion only a prophecy instead of an adjudication, chills legitimate attacks upon existing law believed erroneous, and is unfair to the litigant whose initiative has brought about the change." 242 Md. at 466. It is apparent that these considerations are not applicable simply because a criminal conviction raising the same question was not final at the time of the new ruling.

The majority correctly indicates that *Linkletter*'s principles of retroactivity were applied in *Schowgurow v. State*, 240 Md. 121, 213 A.2d 475 (1965). That case held that the Maryland Declaration of Rights, which required a demonstration of belief in God as qualification for service as a grand or petit juror, violated the federal constitution. In so concluding, the Court deemed *Schowgurow* to constitute a new constitutional rule, overruling earlier Maryland precedents. In *Hays And Wainwright v. State*, 240 Md. 482, 214 A.2d 573 (1965), the Court applied the *Linkletter* formula to all judgments of conviction not final on the date that *Schowgurow* was decided, relying in part upon the general rule of *United States v. Schooner Peggy, supra,* that a change in the law after conviction but before final judgment requires reversal of the judgment on the ground that the decision must accord with the law as it is at the time of final judgment, without regard to whether the issue was raised at trial or not. Later, however, in *Schiller v. Lefkowitz, supra,* we held that while *Schowgurow* applied equally to civil cases, it was not retrospective as to a pending civil appeal where no objection had been made at the trial. We expressed the belief in *Schiller* that *Linkletter* required limited retroactivity as essential to the proper administration of criminal justice, but we recognized that a decision changing preexisting rights can be made wholly prospective without application even to the case in which the change is announced.

*Linkletter*'s overly simplistic retroactivity formula, from

which the Supreme Court has since departed in a number of cases, should not govern this case. *Linkletter* does not promulgate a constitutionally mandated test, as we recognized in *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979). Indeed, we declined to apply *Linkletter* in *Hicks* and should not apply it here. In *Hicks,* decided only last year, we interpreted Maryland Rule 746 a, requiring the scheduling of a criminal case for trial within a 120-day period, to be mandatory. Although the rule contained no express sanction for its violation, we imposed the sanction of dismissal of the indictment for noncompliance with the 120-day requirement. In so interpreting the rule, we in effect overruled an earlier precedent, *Young v. State,* 266 Md. 438, 294 A.2d 467 (1972), which held the provisions of a similarly worded statute to be directory only. *Hicks* involved, as here, a nonconstitutional procedural rule. It was decided on June 25, 1979, and we applied the sanction of dismissal of the indictment on a purely prospective basis, to apply only to cases in which the 120-day period had not commenced to run. In affording *Hicks* a prospective application only, we noted that there was reliance upon the old rule of *Young.* We said that the principles of *Stovall, Linkletter* and *Wiggins* applied not only to new constitutional rulings but also to new interpretations of statutory provisions or rules. While *Hicks* effected a change in the preexisting law and imposed, for the first time, a sanction for violating the requirements of the rule, we saw no need to apply the doctrine that a change in law will be given effect while a case is on direct review. The general rule was simply inapplicable because the change wrought by *Hicks* was made purely prospective and consequently then pending cases were excluded from its benefits.[4]

Both *Hicks* and *Johnson* involved nonconstitutional

---

**4.** *Hicks* was denied the benefits of the new rule established in his case because a majority of the Court concluded that extraordinary cause for a postponement had been established, justifying a continuance beyond the 120-day period, as permitted by Rule 746 a. Had Hicks prevailed, there can be little doubt that he would have been afforded the benefit of the new ruling while all other nonfinal judgments, including cases where the same point was raised, would have been denied the same benefit.

procedural rules, and each changed preexisting law. There is no constitutional requirement that *Linkletter* be applied in either case. *Hicks* and *Johnson* each established a new exclusionary rule. As I have already indicated, in cases involving similar circumstances, the Supreme Court has departed from *Linkletter*. *Peltier, supra; Williams, supra; Desist, supra; Stovall, supra; Johnson v. New Jersey, supra.* We should, consistent with these cases, apply *Johnson* only to interrogations conducted after the date upon which that case was decided, and not, as the majority has done, to a confession taken eighteen months earlier, at a time when the police rightfully relied upon the earlier Maryland precedents. I fear that the majority has unwisely and unnecessarily "locked" itself into the *Linkletter* test in future cases without regard to its long-range impact on the administration of justice in this State.